**UNITED SHOE WORKERS OF AMERICA, AFL–CIO et al.,**

v.

**BROOKS SHOE MANUFACTURING COMPANY et al.**

**Civ. A. No. 24049.**

United States District Court
E. D. Pennsylvania.
Sept. 22, 1960.

**510**

John Silard, Washington, D. C., Saul C. Waldbaum, Philadelphia, Pa., for plaintiffs.

Folz, Bard Kamsler, Goodis & Greenfield, by Thomas F. Devine, Philadelphia, Pa., for defendants.

WOOD, District Judge.

On May 2, 1960, 183 F.Supp. 568, we adopted findings of fact and conclusions of law, wherein we found that the defendant, Brooks Shoe Manufacturing Company, discontinued its manufacturing operations in Philadelphia and moved to Hanover, Pennsylvania, in a deliberate scheme to avoid employing unionized labor and in violation of its existing contract with the plaintiff-union. We reserved our decision with respect to the union's remedy until disposing of the defendants' motion to dismiss as to the individual plaintiffs. Having granted the defendants' motion to dismiss the suit as to the individual employees (see Memorandum and Order of July 28, 1960), ·the sole question remaining is the relief to be awarded to the plaintiff-union for the defendants' breach of the collective bargaining agreement.

To the best of our knowledge, this is the first case in which a Federal Court has been called upon to devise a remedy for a "runaway shop." The National Labor Relations Board has dealt with this problem as an unfair labor practice.[1] The Board, in seeking to remedy the effects of unfair plant relocation, has directed employers to offer reinstatement to employees at the new plant, ordinarily with transportation expenses, or to return the plant to the old location.[2] We are of the opinion that ordering the defendant Michael Goldenberg to move the manufacturing operation back to Philadelphia would create an unwarranted economic hardship on the defendant. Ordering the employer to offer jobs at the Hanover plant, together with transportation expenses, would be impractical.

On the other hand, the plaintiff-union has suffered severe losses from the defendant running away. For twenty years prior to the shutdown of the Philadelphia plant, the plaintiff had, as the bargaining agent for all of the Brooks Shoe employees, secured a collective bargaining contract governing relations between the employer and the employees. For twenty years prior to the shutdown, successive contracts had contained a provision forbidding the removal of the manufacturing operation away from Philadelphia for *any* reason during the life of the contract. (NT March 14, 1960, pp. 109, 110.) The obvious purpose of this provision was to provide the employees with some measure of job security in the highly mobile industry of shoe manufacturing. The ability of the plaintiff-union to assure a shoe worker of his job through such collective bargaining agreements was, of course, gravely undermined in the working community by the defendant's move to Hanover. This decline in the plaintiff-union's reputation has manifested itself during the union's drive to organize the workers in Hanover. The organizational campaign there has met with complete failure.

In addition, the plaintiff-union has suffered a serious financial loss as a direct result of the defendant's breach of the contract. During the shutdown period in Philadelphia, thirty-three dues-paying members of the union were laid off. To

---

1. The threatened or actual moving of a plant is a violation of § 8(a) (1) of the National Labor Relations Act, 29 U.S. C.A. § 158(a) (1) if motivated by a desire to hinder union activity. Klotz (1939), 13 N.L.R.B. 746; Schieber Millinery Co., (1940) 26 N.L.R.B. 937.

2. Rome Products Co., (1948) 77 N.L.R.B. 1217; Mount Hope Finishing Co., (1953) 106 N.L.R.B. 480; New Madrid Mfg. Co., (1953) 104 N.L.R.B. 117.

date, this has resulted in a loss in union dues of $4,251.[3]

The defendants contend that past dues lost should be calculated only for the period during which the collective bargaining contract was in force. In other words, since the contract by its terms expired on December 31, 1957, the dues which the union would have received had the defendant not run away would have terminated on December 31, 1957, *if* the employer and the union did not negotiate a new contract or renew the old one. But to assume that another contract would not have been negotiated seems to us an unreasonable assumption completely without foundation in view of the evidence of the twenty-year history of collective bargaining between the parties. The defendants also contend that as a matter of law damages resulting from a breach of a collective bargaining agreement end when the contract ends. As authority for this position, defendants cite the recent Supreme Court case of United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 1361, 4 L.Ed. 2d 1424, relying on the following quotation:

> "The opinion of the arbitrator in this case, as it bears upon the award of back pay beyond the date of the agreement's expiration and reinstatement, is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission."

We do not agree that this paragraph stands for the proposition argued by the defendants. In our view, the Supreme Court expressed no opinion on the propriety of the award as an item of damages for breach of the collective bargaining agreement.

For a period of twenty years plaintiff-union has successfully negotiated contracts with defendant and represented thirty-three employees at the time of the breach from whom plaintiff received monthly dues.[4] Due to the wilful breach plaintiff has not only lost the right to receive these dues for an indefinite period in the future, but its reputation as a bargaining agent has been seriously jeopardized. Considering the contractual relationship over that twenty-year period, in conjunction with modern and accepted labor management relations, it is only reasonable to assume that had there been no breach, plaintiff-union would have continued to represent the employees of the defendant-company for a similar period in the future with the resultant benefits therefrom.

The business as it is now operated in Hanover is completely owned by Michael Goldenberg who has no plans to terminate it.[5] Incidentally, his nephew, Barton Goldenberg, manages the business and in fact it has been a family controlled endeavor for approximately forty years. These factors make it probable that the business will continue for at least twenty years and, as we have said, had there not been a wilful breach this business would have continued in Philadelphia under a union contract negotiated by plaintiff-union.

We recognize the union's right not only to receive dues from its members, but to maintain its prestige among other bargaining representatives of which the testimony clearly indicates there are many in the shoe industry.

We do not regard the foregoing as mere conjecture. There is a great difference in degree between possibility and probability. The defendant's business may continue for thirty, forty or fifty years in the future; it may expand, necessitating more employees; union

---

3. We computed this figure from the union's check-off list (plaintiff's exhibit No. 1 at the hearing on the issue of damages) on the basis of each employee's months out of the union after being laid off at Brooks Shoe.

4. The contract, as do most contracts in the shoe industry, provided for a union-shop.

5. He so testified at the hearing on the issue of relief. (Nt, September 12, 1960, p. 44.)

wages may rise and union dues increase; these are all mere possibilities. But projecting into the future the *status quo* of the parties as they were at the time of the defendant's breach, we are able to conclude the *probable* losses which the plaintiff will incur. We think these losses are capable of mathematical evaluation based upon reasonable inferences from the evidence.[6] The employees of the defendant's Philadelphia plant numbered thirty-three, each paying $3 per month in union dues to plaintiff, at the time the shutdown began. This means that the plaintiff-union is losing $1,188 per year in dues which it would now be receiving had the defendant not run away. Projecting that figure into the future, based upon the twenty-year minimum "life expectancy" of the Brooks Shoe Manufacturing Company, Inc., and aided by the twenty-year history of plaintiff's status as bargaining agent of Brooks Shoe employees, we calculate a future loss of union dues of $23,760. Added to the $4,251 in dues lost to date, we are of the opinion that the plaintiff-union should receive $28,011 in compensatory damages.

There remains for our consideration the question of whether we have the power to award punitive damages, and if so, how we should exercise our discretion in this regard. We have concluded that it is within our power to award punitive damages and that we should exercise our discretion and award plaintiff the sum of $50,000.

■ This is a suit brought under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185. The Su-

preme Court of the United States has specifically directed the judges of the Federal District Courts to call upon their judicial inventiveness in fashioning a body of Federal law to remedy breaches of collective bargaining contracts in suits brought under § 301.[7] We are not limited to traditional common law doctrines of relief nor bound by state law when entertaining an action under § 301. Although that section does not provide for the awarding of punitive damages, neither does it prohibit such an award.

Having no statutory directive, and being free to form our own remedy, we have looked (as directed by the Supreme Court) to the policy of the N.L.R.A. for guidance. As we mentioned previously, the Act itself makes the removal of a plant to another location, for the purpose of avoiding union activities, an unfair labor practice. The breach of the contract by the defendant in the case at bar is conduct specifically prohibited by the Act as interpreted by the N.L.R.B. This indicates to us that the breach of contract here involved is more than a private dispute between an employer and a union; rather, it is a violation of the national labor policy fashioned by Congress and applied by the N.L.R.B. The defendant-employer has knowingly and wilfully violated that policy and has deliberately run away from his responsibilities to bargain with the lawfully designated representative of his employees, the plaintiff-union.

Although we have found no case under § 301 in which the issue of punitive damages has been raised or ruled upon, under a similar provision of the Act, § 303, punitive damages have been awarded.[8]

6. Where unlawful acts of union make it difficult to measure damages exactly, it is sufficient to show approximate amount of damages as a matter of just and reasonable inference from the evidence. Where union causes abandonment of profitable business, evidence of past profits and *estimate of probable future profits* is sufficient to sustain award of substantial damages. United Mine Workers of America v. Patton, 4 Cir., 1954, 211 F.2d 742, 47 A.L.R.2d 850.

7. Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972.

8. United Mine Workers of America v. Meadow Creek Coal Co., 6 Cir., 1959, 263 F.2d 52; Osborne Mining Co. v. United Mine Workers, (D.C.Tenn.1959) 38 Labor Cases 65, 741; affirmed 6 Cir., 1960, 279 F.2d 716. Contra (under 303); United Mine Workers of America v. Patton, 4 Cir., 1954, 211 F.2d 742, 47 A.L.R. 2d 850.

Finally, we note that the defendant Michael Goldenberg is now paying in his Hanover plant wages fifteen to twenty percent below the union wage scale. (NT, March 14, 1960, p. 112.) In spite of plaintiff-union's efforts, the Hanover shoe workers remain unorganized.

For all of the foregoing reasons, we hereby enter the following Judgment:

#### Judgment.

The Clerk is directed to enter Judgment in favor of the plaintiff and against the defendants Brooks Shoe Manufacturing Company, Inc., and Brooks Shoe Manufacturing Company in the sum of $78,011.

The liability of Michael Goldenberg for the above Judgment is based solely on his position as a partner in the defendant The Brooks Shoe Manufacturing Company.