Lawrence **GIORDANO** et al., Plaintiffs,

v.

**MACK TRUCKS, INC.**, a corporation of the State of New York, Defendant.

Civ. No. 918-61.

United States District Court
D. New Jersey.
April 12, 1962.

Harry W. Herzog, Plainfield, for plaintiffs.

Carpenter, Bennett & Morrissey, Thomas L. Morrissey, Newark, N. J., for defendant; Kaye, Scholer, Fierman, Hays & Handler, William J. Isaacson, New York City, of counsel.

LANE, District Judge.

On October 20, 1961, plaintiffs, comprising some 116 individuals, were among those employed at defendant Mack Trucks' manufacturing plant in Plainfield, New Jersey. The Master Bargaining Agreement, entered into between plaintiffs' collective bargaining representative—the International Union, United Automobile Workers of America (U.A. W.)—and defendant, terminated on that date.

On October 31, 1961, the U.A.W., certified representative of all Mack employees, culminated lengthy negotiations over Mack's prospective transfer to Hagerstown, Maryland, by executing the "Shop Separation, Pension and Transfer Agreement."

Plaintiffs, who constituted a small percentage of the 2,700 members in the collective bargaining unit, are dissatisfied with aspects of the separation agreement. They contend that defendant Mack has ignored "vested rights" of union members obtained through prior contracts, notwithstanding the separation agreement. These purported vested rights are seniority, pension, retirement, hospitalization, insurance, severance, transfer, and other rights pertaining to hours, wages, and working conditions.

Plaintiffs, seeking to enforce their alleged vested rights, are asking damages of $11,850,000. They are New Jersey citizens; defendant Mack Trucks, Inc., is a New York corporation whose principal place of business is in New York. Jurisdiction is based on diversity.

Motions were before this court wherein plaintiffs applied for:

1. An order restraining defendant from hiring any further employees at its Hagerstown, Maryland, plant.

2. An order directing a survey be conducted under supervision of this court to determine which of defendant's employees formerly employed at its Plainfield, New Jersey, plant wish to transfer to the Hagerstown, Maryland, plant.

3. An order striking defendant's Third, Fourth, Sixth, Seventh, Eighth, and Ninth Separate Defenses.

The court advised the parties that it would first consider the more material issue as to whether an examination of the pleadings would demonstrate that there had been set forth a cause of action upon which relief could be granted. We allowed counsel two weeks in which to prepare briefs and oral arguments on this question.

## THE COMPLAINT

In the First Count, the plaintiffs allege that as employees of defendant they are members of Local 343, U.A.W., a subordinate unit of the international union that had been certified by the National Labor Relations Board as the exclusive collective bargaining representative for the plaintiff-employees at the Plainfield plant of defendant Mack; that the master agreement executed by defendant Mack and U.A.W., the collective bargaining representative, terminated on October 20, 1961; that, prior to said date, plaintiffs, as employees of defendant, had acquired many vested rights which extend beyond the date of termination; that prior to the termination date defendant Mack had announced its intention to close its Plainfield plant and to relocate at Hagerstown, Maryland; that defendant's decision to relocate at Hagerstown was not based upon any legitimate business interests but rather constituted an attempt by defendant Mack to run away from its normal and vested contractual obligations to its employees; that defendant Mack, by unilateral survey, had asked its employees, including plaintiffs, whether they would be willing to relocate at Hagerstown if offered jobs there; that at no time has defendant actually offered a job at Hagerstown to any of the plaintiff-employees nor has Mack spelled out to its employees the conditions as to wages and conditions of employment to be encountered at Hagerstown; that, on the contrary, defendant Mack has made it apparent that it is not desirous of taking its employees at Plainfield to its new plant at Hagerstown, with the exception of certain arbitrarily selected employees; that defendant Mack has offered "double severance" to employees at Plainfield who agree in writing to terminate at Plainfield and has requested those who had evidenced an interest in going to Hagerstown to change their minds for a consideration of "double severance"; that the actions of defendant are designed to deprive plaintiffs and other employees at Plainfield from gaining normal contractual rights in which they have a vested interest and that such rights survive the termination of the master contract; that the actions of defendant constitute a breach and violation of the master agreement and have prevented plaintiffs and other employees from further performing under the master agreement; and that by reason of the wrongful acts of defendant, plaintiffs

have been individually damaged to the extent of $50,000 and collectively in the sum of $11,850,000.

In the Second Count, the plaintiffs allege that each of the three surveys undertaken by defendant Mack were conducted unilaterally; that a new survey should be undertaken under the supervision of the court and that it should delineate working conditions, wage scale, and the extent of vested rights that have accrued to those who desire to transfer from Plainfield to Hagerstown; that the terms of the master agreement should be held to govern prospective transfers from Plainfield to Hagerstown; and that an injunction should be issued preventing the hiring of new employees at Hagerstown until the determination has been made as to the new survey and as to the application of the master agreement in relation to relocation.

In the Third Count, the plaintiffs contended their action is a class action and they invite other members of the class to join.

Plaintiffs in the Fourth Count allege that defendant Mack offered to employees "double severance" in consideration for non-physical interference with the moving operation from Plainfield to Hagerstown; that plaintiffs as well as their fellow employees did not interfere with such moving operations; that defendant, having benefitted from such non-interference has wrongfully demanded of plaintiffs and other employees that they sign a release in respect to all their accumulated vested rights before defendant will pay over the agreed sum for such non-interference; and that an accounting should be had in regard to these moneys lawfully due plaintiffs.

In the Fifth Count of the complaint, it is alleged irreparable harm will be done to plaintiffs if defendant is allowed to hire new employees at Hagerstown before a determination of the rights of the plaintiffs, as recited in the complaint, has been made, and that, therefore, an injunction preventing defendant from hiring any new employees at Hagerstown should be issued, pending such determination.

## THE ANSWER

Defendant Mack Trucks in its answer sets out the following separate defenses:

1. Complaint fails to state a claim upon which relief can be granted.

2. Court lacks jurisdiction of the action and the subject matter thereof.

3. Plaintiffs are barred and estopped from claiming "vested rights" under any expired collective bargaining agreements.

4. On October 31, 1961, Defendant and U.A.W., the collective bargaining agent for all employees, including plaintiffs, entered into a separation agreement whereby the rights of all employees as to termination at Plainfield and employment at Hagerstown are fully established.

5. Plaintiffs waived relief sought here by virtue of their representative's participation in the separation agreement.

6, 7, 8, and 9. Arbitration provision of separation agreement must be utilized by plaintiffs; their failure to exhaust remedies thereunder acts as a bar to this action.

10, and 11. Plaintiffs are barred and estopped from seeking an additional survey by reason of their agent's approval of the survey completed and the incorporation thereof in the separation agreement.

## THE SEPARATION AGREEMENT

The Shop, Separation, Pension and Transfer Agreement, attached to and made part of the answer of the defendant, was made on October 31, 1961, between Mack Truck, Inc., defendant herein, and the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL-CIO. At the beginning thereof, it is stated:

"The company and the union have concluded an agreement covering all of the terms relating to the separation, pension and transfer of the Plainfield employees within the collective bargaining unit."

The agreement is divided into five sections:

A. TRANSFER

1. and 2. Employees who have affirmatively signified on the third survey that they wish to transfer to Hagerstown should be offered an opportunity to transfer to Hagerstown within a period of one year from November 1, 1961, if they have certain qualifications, which are thereupon listed.

3. It is understood however, that their relative seniority under any collective bargaining agreement that may hereinafter be executed at Hagerstown shall not be affected by the order in which the Plainfield employees commence employment at Hagerstown.

4. * * *

5. The company may, however, in its discretion, offer an opportunity to Hagerstown to any other Plainfield employees, irrespective of whether they meet any of the foregoing qualifications or other requirements contained in this agreement.

6. Upon acceptance of an offer and commencement of employment at Hagerstown, a Plainfield employee shall receive an allowance of $200 to be applied toward relocation expenses.

7. All employees offered an opportunity of employment at Hagerstown shall receive a minimum of two weeks' notice to report and unless otherwise expressly noted, all references to the Master Shop Agreement are to the Master Shop Agreement dated October 20, 1958.

8. In the event that the company does not make an offer before May 1, 1962, to an eligible employee who has signified his desire to be transferred to Hagerstown, the employee shall have the following choice:

(a) He shall immediately become eligible to receive the separation payments and pension benefits provided in subdivision B of this agreement.

(b) He may, by taking no action, continue to be considered for transfer to Hagerstown in accordance with the procedures provided above.

9. * * *

10. All employees who transfer from Plainfield to Hagerstown pursuant to the procedures provided in this agreement shall retain their service credits for purposes of supplemental unemployment benefits, pensions, insurance, holidays and vacations. In addition, for purposes of layoff and recall, all of the aforesaid employees who transfer from Plainfield shall, except as provided differently below, retain their respective seniority in whatever bargaining unit may hereinafter be established in accordance with the following principles: * * *

11. * * *

12. * * *

B. SEPARATION AND PENSIONS

1. The Plainfield employees who qualify under any of the following provisions shall be eligible to receive separation payments in accordance with the hereinafter modified provision * * * to Master Shop Agreement of October 20, 1958:

(a) Plainfield employees who have previously signified on the surveys that they do not desire to be considered for transfer to Hagerstown.

(b) Plainfield employees who have signified on the surveys that they desire to transfer to Hagerstown but who are ineligible under the agreement for transfer to Hagerstown.

(c) Plainfield employees who have signified on the third survey that they desire to transfer to Hagerstown but who do not receive an offer of transfer to Hagerstown prior to May 1, 1962, and who thereafter, before receiving an offer of transfer, signify that they no longer desire to

be considered for transfer to Hagerstown.

2. * * *

3. Except as to the change in separation payments referred to in subsection 3(e) below, the benefits under the SUB program provided in the Master Shop Agreement of October 20, 1958, shall be increased effective January 1, 1962, as follows:

(a) From 65% of take-home pay to 62% of gross pay, * * *.

(b) Maximum weekly benefit shall be increased from $30 to $40.

(c) An employee who has exhausted his Unemployment Benefits shall continue to be eligible for SUB weekly benefits up to a maximum of $40 until his SUB credits are exhausted.

(d) In a short work week, employees with one year or more seniority shall receive 65% of their gross pay for all hours under 40, * * *.

(e) Effective October 20, 1961, separation payments specified in the aforesaid Master Shop Agreement shall be increased in amounts equal to 25%.

4. In addition to the separation payments provided under * * * the Master Shop Agreement of October 20, 1958, * * * each employee who meets the eligibility requirement * * * shall, upon application for the separation benefits provided in said Article 12, be entitled to receive additional benefits as follows: * * *

5. (a) The monthly amount of pension payable to an employee retired on or after January 1, 1962, shall be $2.80 a month for each of his years of credited service. * * *

(b) An employee of 60 or more but less than 65 years of age as of his termination of employment shall be entitled to receive double early retirement benefits set forth in * * * the Master Shop Agreement of October 20, 1958, as modified in Section 5(a) above until such person attains his 65th birthday, or he becomes entitled to an unreduced Social Security benefit, whichever occurs earlier, at which time normal retirement benefits shall become payable.

(c) An employee of 58 or more but less than 60 years of age as of the date of his termination of employment shall have the following option:

(i) To make immediate application for double early retirement benefits. * * *

(ii) To apply immediately for separation payments under Sections 1 through 4 above * * *.

(d) * * *

(e) Eligible employees age 40 and above with 10 or more years of credited service accumulated in accordance with the plan to qualify for deferred vested pension rights pursuant to said Article 8 with credit for all years of service irrespective of whether accumulated prior or subsequent to age 30.

7. In the event an employee fails to qualify for the additional benefits provided in this subdivision, his separation and pension shall be governed in accordance with the terms of the Master Shop Agreement of October 20, 1958, as modified. * *

C. WORKING WITHOUT INTERRUPTION

"In order to continue to qualify for the additional benefits provided in this agreement, or in order to continue to qualify for transfer to Hagerstown, the Plainfield employees shall, in addition to the requirements provided above, meet all the following requirements:

"1. Work at Plainfield so long as the company provides an opportunity for employment at said plant * *;

"2. Work without participation in a strike or slowdown;

"3. In no way, including strike or slowdown, interfere with produc-

tion or operations including movement of machinery, equipment or products."

### D. ARBITRATION

"Any dispute regarding the application or interpretation of this Shop, Separation, Pension and Transfer Agreement which the company and the union are unable to resolve at the local level shall be referred to and taken up by a committee composed of an equal number of company and union representatives. * * * The company and the union reserve the right to designate alternates or replacements for their respective representatives. In the event that any dispute is not settled by the foregoing committee, it may be referred to a Permanent Arbitrator for final and binding arbitration. The Permanent Arbitrator shall be designated by the foregoing company and union representatives, and, if they are unable to agree, he shall be selected by the Committee from a panel submitted by the American Arbitration Association in accordance with its rules and procedures. The power of the Arbitrator stems from this Agreement and his function is limited to interpreting and applying its terms."

### E. ACKNOWLEDGMENT

"The Company and the Union, on its behalf and that of its affiliates, acknowledge that the instant Agreement encompasses all of the terms relating to the separation, pension and transfer of the Plainfield employees within the aforedescribed collective bargaining unit, and each of them waives the right to bargain collectively with respect to any matter regarding separation, pension and transfer, whether or not such matter is referred to or covered in the instant Agreement.

"IN WITNESS WHEREOF, the parties have executed this Shop, Separation, Pension and Transfer Agreement as of the day and year first above written."

For the International Union there are three signatories. A Vice President signed for the company.

### "RUNAWAY SHOP"

Plaintiffs allege that defendant's actions fall within the legal definition of "runaway shop." As authority for this position they offer United Shoe Workers etc. v. Brooks Shoe Mfg. Co., 187 F.Supp. 509 (E.D.Pa.1960). In Brooks the employer removed its factory from Philadelphia to Hanover, Pennsylvania. The court held that the discontinuance of manufacturing operations in Philadelphia and the subsequent removal was a deliberate scheme to avoid employing unionized labor and a violation of the existing collective bargaining agreement with the plaintiff union. United Shoe Workers v. Brooks Shoe Mfg. Co., 183 F.Supp. 568 (E.D.Pa.1960). Thereafter, the court ruled that the union could recover an award for loss of future dues arising from the contract breach. United Shoe Workers, etc. v. Brooks Shoe Mfg. Co., 187 F.Supp. 509 (E.D.Pa.1960). Thus, District Judge Wood devised a remedy for a "runaway shop" (the actual moving of a plant, motivated by the desire of the employer to hinder union activity).

The case at bar presents no such circumstances. Mack has not engaged in "runaway shop" practices, but has negotiated with the union a separation agreement that determines the rights of union members pertaining to separation at Plainfield and transfer and employment at Hagerstown.

### VESTED RIGHTS

In System Federation No. 59 v. Louisiana & A. Railway Co., 119 F.2d 509 (5th Cir. 1941), it was held that seniority rights under a collective bargaining agreement persist only so long as the collective bargaining agreement remains in force; and that seniority rights were unprotected after termination of the con-

tract creating these rights. Quoting the System case, at page 515:

"* * * collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights created and arising under the contract, beyond its life, when it has been terminated in accordance with its provisions."

Moreover, in Elder v. New York Central Railroad Co., 152 F.2d 361, 364 (6th Cir. 1945), Circuit Judge Martin evinced the opinion:

"The [seniority] right, however, is not inherent. It must stem either from a statute or a lawful administrative regulation made pursuant thereto, or from a contract between employer and employee, or from a collective bargaining agreement between employees and their employer."

However, in Zdanok v. Glidden, 288 F.2d 99 (2d Cir. 1961), cert. granted [limited to question, "Does participation by a Court of Claims judge vitiate the judgment of the Court of Appeals?"] 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961), the court held that seniority rights were vested rights which were not lost when the collective bargaining agreement expired. In the Glidden case, the defendant removed his plant to Bethlehem, Pennsylvania, from Elmhurst, New York, after the expiration of a collective bargaining agreement. Five workers who lost their jobs by the removal sued for breach of contract. Suit was based upon provisions in the agreement, stating that employees with five years of continuous service upon layoff would be reemployed within three years if an appropriate position opened and that those with less than five years seniority were to be re-employed within two years. It was defendant's argument that seniority rights fail to survive the agreement that created them. In holding for the plaintiffs, the court found that the subject provisions were intended to extend guarantees beyond the termination of the collective bargaining agreement.

The facts of the instant case are distinguishable from Glidden. There, the employer and the collective bargaining representative had not entered into a separation agreement; in the case at bar there is a separation agreement negotiated over a period of several months wherein the union's and employer's rights pertaining to separation and employment are dealt with extensively.

## REPRESENTATIVE CAPACITY OF U.A.W.

The Labor-Management Relations Act has established a statutory scheme in the collective bargaining field. 29 U.S.C.A. § 159(a) (1958) provides:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment."

The policy of the Act is accurately set forth in Note, 71 Yale L.J. 569 (1962):

"This statute has deprived an employer of his traditional freedom to choose a contract partner. It has imposed upon him instead a legal obligation to bargain with a particular union solely because of the status the union has attained through election. Position, not choice, brings the parties together. And if an employer refuses to negotiate with the union representing his employees, his refusal constitutes an unfair labor practice under section 8 of the National Labor Relations Act."

When the U.A.W., the authorized bargaining representative for the Mack employees, entered into the Shop, Separation, Pension and Transfer Agreement with Mack on October 31, 1961, the union was bargaining in accordance with the collective bargaining scheme of our federal labor relations laws. In so doing,

the statutory obligation of the certified union to represent all members of the appropriate unit requires the union to make an honest effort to serve the interests of all those members without hostility to any. Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). A collective bargaining representative has discretion to make such concessions and accept such advantages as in the light of all relevant considerations he believes will best serve interests of employees whom he represents, and he must weigh the relative advantages and disadvantages of differing proposals. Huffman, at 337–338, 73 S.Ct. at 685, further states that a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

■ There is no allegation here of any violation of the union's duty of fair representation. Plaintiffs do not allege that there was any basic unfairness in the representation, or hostile discrimination or arbitrary action on the part of the union in negotiating the October 31, 1961, Shop, Separation, Pension and Transfer contract.

Thus, if the U.A.W. is the duly authorized bargaining representative of the Mack employees, the separation agreement is binding upon all employees, including plaintiffs. If binding, they must look to the agreement for determination of their rights.

The plaintiffs allege that they are employees of the defendant, and for some time past have been members of Local 343 of the United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO (subordinate unit of the International Union); said International Union having been certified by the National Labor Relations Board as the exclusive collective bargaining representative for the plaintiffs herein, employees at the Plainfield, New Jersey, plant.

■ The determination of whether a union is the exclusive collective bargaining representative is a matter not for this court but for the National Labor Relations Board. See Fur Workers Union, Local No. 72 v. Fur Workers Union, Local No. 21238, 70 App.D.C. 122, 105 F.2d 1, 12 (1939) where the court states:

> "On the contrary it seems clear that by the National Labor Relations Act Congress intended to confer exclusive initial jurisdiction upon the Board to determine the appropriate and lawfully selected bargaining unit for employees, and intended to give to the Board alone appropriate machinery, to wit, elections machinery, for making such determination."

Accord: La Crosse Telephone Corp. v. Wisconsin Emp. Rel. Bd., 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463 (1949).

The Board has not considered decertification of the U.A.W.; therefore, we reject the oral argument that the bargaining representative lost its capacity to act for plaintiffs on October 20, 1961, the termination date of the Master Bargaining Agreement.

## ARBITRATION

■ The arbitration of labor disputes under collective bargaining agreement is part and parcel of the collective bargaining process. United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Arbitrators are ordinarily men that possess the requisite training and ability needed to decide labor grievances justly. Id. at 581–582, 80 S.Ct. at 1352.

United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) expresses the conviction that the Labor Management Act's stated policy—final adjustment by methods agreed upon by the parties is the desirable method for settlement of grievance disputes—can be effectuated only if means chosen by parties for settlement of their differences under collective bargaining are given full play. See 29 U.S.C.A. § 173(d). As for

the subject matter which may be covered by the arbitration agreement, the Supreme Court has ruled that where collective bargaining agreement calls for submission of all grievances to arbitration, no exception should be read into the grievance clause. Id. at 567, 80 S.Ct. at 1346.

International Telephone & Telegraph Corporation v. Local 400, Professional, Technical and Salaries Division, International Union of Electrical Workers, 286 F.2d 329, 330 and 331 (3d Cir. 1960) states:

"* * * the judicial function is narrowly circumscribed in cases such as this where the parties have agreed to submit to arbitration disputes arising under their collective bargaining agreement. That function is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement. A court cannot pass on the merits of the claim. That is the arbitrator's function. Not only is the law clear, but its application to the controlling facts here is facilitated by the guidance contained in United Steelworkers of America v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 584–585, 80 S.Ct. 1347, 1354, [4 L.Ed.2d 1409] where Justice Douglas said: 'In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.'"

An examination of the separation agreement shows that "the company and the union have concluded an agreement covering *all of the terms* relating to the separation, pension and transfer of the Plainfield employer within the collective bargaining unit." [Emphasis added.] Further, the section on "Arbitration," resolves that "*Any dispute* regarding the application or interpretation of this Shop,

Separation, Pension and Transfer Agreement which the Company and the Union are unable to resolve * * * shall be referred to and taken up by a committee. * * *" [Emphasis added.] Again, the section entitled "Acknowledgment" recites the agreement "encompasses *all the terms* relating to the separation, pension and transfer. * * *" [Emphasis added.]

If any disputes exist between Mack and the U.A.W., as representatives of all employees, over the interpretation and application of the separation agreement, these disputes may be submitted to arbitration as provided for by Section D of the Shop Separation, Pension and Transfer Agreement.

## CONCLUSION

Plaintiff has put forth many arguments. We have discussed those meriting consideration, and it is this court's conclusion that:

(1) The plaintiffs are bound by the separation agreement of their U.A.W. union and the defendant Mack.

(2) The plaintiffs alleged "vested rights" are governed by the October 31, 1961, separation agreement entered into between Mack and the U.A.W. Therefore, plaintiffs cannot seek damages from the employer for breach of their vested rights but must look to the broad remedies provided for in the separation agreement. Any other result would create the very chaos and confusion that the National Labor Relations Act and its subsequent amendments seek to avoid.

(3) Any attack on the conclusion that the U.A.W. is the exclusive collective bargaining agent of the Mack employees is not a matter for this court but the National Labor Relations Board.

(4) If there is any disagreement about the interpretation and application of the separation agreement, the plaintiff's union, the U.A.W., should submit the dispute to arbitration as provided for by Section D of the Shop Separation, Pension and Transfer Agreement.

Accordingly, this court is compelled to dismiss the plaintiffs' complaint and

to grant judgment on the pleadings in conformity with Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S.C. A. in favor of the defendant. This is done with the full understanding that plaintiff-employees and all members of the collective bargaining unit have certain specified rights set out in the separation agreement, and the means for enforcement of those rights provided therein.

This opinion shall constitute the findings of fact and conclusions of law required by F.R.C.P. 52(a) and amends the opinion given from the bench on March 19, 1962, at the conclusion of extensive oral argument.