NEAL ET AL., APPELLANTS, *v.* RELIANCE ELECTRIC & ENGINEERING CO., MASTER ELECTRIC DIVISION, APPELLEE.

[Cite as Neal v. Reliance Electric & Engineering Co., 12 Ohio App. 2d 183.]

(No. 3103—Decided August 31, 1967.)

184

*Messrs. Sharts, Singer & Brown, Messrs. Frank, Thomas, Brumbaugh & Corwin* and *Mr. Ronald H. McDonnell, Jr.,* for appellants.

*Messrs. Pickerel, Schaeffer & Ebeling, Mr. Maurice J. Leen, Jr.,* and *Mr. Gordon H. Savage,* for appellee.

CRAWFORD, P.J. This case is before the court for a second time. We previously held that plaintiffs-appellants had stated a cause of action for declaratory judgment sufficient against demurrer. *Neal v. Reliance Electric and Engineering Co.* (1963), 118 Ohio App. 501.

As former employees of the defendant corporation, plaintiffs brought this as a class action to determine their rights under collective bargaining agreements made on their behalf by the local labor union of which they were members. The issues arise from the employer's moving its entire operation to a new plant in Columbus, Indiana.

The principal right claimed is that of seniority, which plaintiffs contend is a vested and permanent right so as to entitle them as employees in defendant's Dayton plant, now closed, to be transferred to defendant's new plant in Columbus, Indiana, with the same seniority rights as they had attained in Dayton under the collective bargaining agreements.

The Court of Common Pleas decided the issues in favor of the defendant and against plaintiffs' claimed rights. Plaintiffs have appealed on questions of law.

On January 16, 1941, defendant corporation was known as The Master Electric Company. In July, 1957, it was purchased by The Reliance Electric and Engineering Company and was thereafter designated as in the caption.

From January 16, 1941, until September 5, 1956, defendant's employees belonged to and were represented by a local labor union, known successively as The United Electrical Radio and Machine Workers Local 754, CIO, The United Electrical Radio and Machine Workers Local 754, AFL-CIO, and The United Electrical Radio and Machine Workers Local 754. On September 5, 1956, the employees disaffiliated themselves from that union and joined and were continuously thereafter represented

by the International Association of Machinists AFL-CIO Local No. 2154 as their bargaining representative.

Continuous collective bargaining agreements, each for a specified period, have existed from March 17, 1941, up to and including July 1, 1960, on which date another two-year agreement was entered into.

Early in 1960, preceding the negotiations for this last agreement, the defendant laid before its employees what appeared to be an unfavorable business and financial situation, calling for changes by both employer and employees, including an incentive wage arrangement. No such arrangement was included in the agreement of July 1, 1960.

On July 27, 1960, defendant notified its employees of its intention to discontinue the operation in Dayton and to move it to a new plant at Columbus, Indiana. The members of Local 2154 IAM elected certain of their number as officers, and as members of a negotiating committee. They, together with the attorney for the local, and a Grand Lodge representative from AFL-CIO, negotiated with the defendant a "Memorandum of Understanding" or preliminary agreement, dated October 17, 1961. This provided that present employees might apply for transfer as new employees without their existing seniority, at the new plant, the company to have discretion, to be reasonably exercised, to select those whom it could use, and so far as possible to employ such applicants ahead of local Indiana personnel.

As to those not transferred to Indiana, it provided severance pay, accumulated vacation pay, and distribution of retirement funds which had accumulated partly from contributions of the employees and in greater part from contributions of the employer, and that the individual employees, as a condition of receiving severance payment, would "sign a release of all rights accruing to them under the collective bargaining agreement whether vested or not vested, and whether accrued in the past or contemplated in the future by said agreement, including seniority, together with all rights to which they may be entitled under the pension agreement"; and that "the agreement itself dated July 1, 1960, shall be automatically terminated" when work stops in the Dayton plant.

According to the minutes of Local 2154, a special meeting

of the membership was held on October 17, 1961, at which this "Memorandum of Understanding" was recommended by the negotiating committee and adopted by the members. Pursuant to this action, the negotiating committee entered into a formal "Supplemental Agreement" with the defendant on November 7, 1961, embodying these provisions.

These releases which were to be signed by the employees released: (a) the defendant "from any and all claims of whatsoever nature arising out of the collective bargaining agreement dated July 1, 1960, between said company and Local 2154, of the International Association of Machinists, AFL-CIO and all prior such agreements between said parties, whether vested or not vested, and whether accrued in the past or contemplated in the future by any said agreement, including seniority"; (b) Local 2154 and the International Union, their officers and agents "from any and all claims of whatsoever nature arising out of my membership in said Union and/or its representation of me in connection with my employment at (defendant plant) or termination thereof, to the date of this release"; and (c) "The Cleveland Trust Company of Cleveland, its officers or agent, from any and all claims of whatsoever nature arising out of my participation in The Reliance Electric and Engineering Company, Master Electric Division, contributory retirement plan, dated July 1, 1960, and trust agreement."

Nearly all of the approximately 1,250 employees and members of Local 2154 signed the releases and presumably received their severance pay and the other considerations agreed upon. Of the twenty-five plaintiffs, fourteen signed these releases. The remaining eleven, one of whom is now deceased, did not, and neither, apparently, did three others.

Plaintiffs contend that as individual employees they may assert the rights secured to them by a collective bargaining agreement. This right is not challenged. The issue is what rights do the plaintiffs actually have.

There are two assignments of error: first, that the trial court erred in finding that plaintiffs did not have vested rights; and, second, that the trial court erred in holding the purported supplemental agreement valid.

This case arises under Section 301 (a) Labor Management

Relations Act of 1947 [June 23, 1947, c. 120, Title III, Section 301(a), 61 Stats. at L. 156; 29 U. S. Code, Section 185(a) ]. That provision vested jurisdiction, but not exclusive jurisdiction, in any District Court of the United States having jurisdiction of the parties. The state courts have concurrent jurisdiction with the federal courts in such cases, but all must apply federal substantive law. The statute has been so construed. *Charles Dowd Box Co.* v. *Courtenay* (1962), 368 U. S. 502; *Humphrey* v. *Moore* (1964), 375 U. S. 335; *Smith* v. *Evening News Assn.* (1962), 371 U. S. 195; *Local 174, Teamsters,* v. *Lucas Flour Co.* (1962), 369 U. S. 95; *Vaca* v. *Sipes* (1967), 17 L. Ed. (2d) 842, 64 L. R. R. M. 2369; *Textile Workers Union of America* v. *Lincoln Mills of Alabama* (1957), 353 U. S. 448, 40 L. R. R. M. 2113; *Atkinson* v. *Sinclair Refining Co.* (1962), 370 U. S. 238, 50 L. R. R. M. 2433.

As to the first assignment of error, plaintiffs rely heavily upon the protracted and much-debated case of *Zdanok* v. *Glidden Co.* (S. D. N. Y., 1960), 185 F. Supp. 441; reversed by a divided court (2nd Cir., 1961), 288 F. (2d) 99; rehearing (S. D. N. Y., 1963), 216 F. Supp. 476; affirmed (2nd Cir., 1964), 327 F. (2d) 944; certiorari denied (1964), 377 U. S. 934.

On the original appeal of that case it was held by a majority of the court that employees acquired vested rights under a seniority provision of a collective bargaining agreement, which could be enforced after termination of the agreement and in the employer's transferred plant in another state. The opinion noted, however, that the employee or his authorized agent could bargain away this right. A vigorous dissent by Lumbard, Chief Judge, emphasized that the terms of the contract are determinative and that if rights are to persist beyond the term of the collective bargaining agreement, the agreement must so provide.

After retrial, upon the second appeal, the court apparently felt constrained to apply the same "law of the case," although the majority expressed grave doubt whether they would follow the same course in future cases; and Judge Lumbard, reluctantly concurring on the doctrine of the law of the case, stated positively that the prior decision of that court "is entitled to no precedential value so far as this (second) circuit is concerned."

Upon appeal of a collateral issue in the case, the Supreme

Court commented that the lower court had decided the case in consideration of New York, rather than federal, law (370 U. S. 537).

Defendant's counsel cites, among others, the case of *Oddie* v. *Ross Gear and Tool Co.* (E. Dist. of Mich., S. D., 1961), 195 F. Supp. 826; reversed (6th Cir., 1963), 305 F. (2d) 143; certiorari denied (1962), 371 U. S. 941. Cognizance was taken of this case in the second decision in *Glidden,* as casting doubt upon the *Glidden* court's future course in such cases.

*Thompson* v. *Brotherhood of Sleeping Car Porters* (1965), 243 F. Supp. 261, is cited by plaintiffs for the approving comment upon *Glidden* (pp. 268 and 269). However, the impact upon the law of the *Thompson* opinion by a trial court is considerably diminished by the fact that in that particular case the collective bargaining agreement itself contained a promise to re-employ in order of seniority after the contract's terminal date.

The *Oddie case,* decided in our own sixth circuit, held that seniority rights under a collective bargaining agreement are not vested or earned in the sense that they may not be terminated by discontinuance of the employer's business or bargained away by the union, and that the employer's relocation of its plant in another state and refusal to recognize the employees' seniority rights in the new plant did not affect any vested rights of employees where the contract limited the rights to the original plant. Other decisions denying the vested-right theory are: *Giordano* v. *Mack Trucks, Inc.* (D. C. N. J., 1962), 203 F. Supp. 905; *Slenczka* v. *Hoover Ball and Bearing Co.* (N. D. Ohio, E. D., 1963), 215 F. Supp. 761; *Panza* v. *Armco Steel Corp.* (W.D. Pa., 1962), 208 F. Supp. 50; *Colbert* v. *Brotherhood of Railroad Trainmen* (1953), 206 F. (2d) 9, certiorari denied (1954), 346 U. S. 931.

In our present case, the agreement of July 1, 1960, did not by express terms confine seniority rights to the Dayton plant, although that division of defendant corporation was designated and it is arguable that such was the implication.

However that may be, there is nothing to signify an intention that the rights should extend beyond the period of the agreement. If the employer had simply quit business completely, or if it had continued in business at the same location but

without a new agreement, or under a new agreement which omitted any reference to seniority rights, it is difficult to see how any seniority rights could have persisted. Unless otherwise provided in the contract, a seniority right is essentially a present right to preferential opportunity for current employment.

Seniority rights can rise no higher than their source; and their source in this case is the agreement of July 1, 1960, which terminated by its original terms on June 30, 1962. *System Federation No. 59 of Railway Employees, A. F. L. v. Louisiana and A. Ry. Co.* (5th Cir., 1941), 119 F. (2d) 509; certiorari denied (1941), 314 U. S. 656; *Elder v. New York Central R. R. Co.* (6th Cir., 1945), 152 F. (2d) 361.

See, also, in a case of discontinuance of business: *Local Lodge No. 2040 I. A. M. v. Servel, Inc.* (7th Cir., 1959), 268 F. (2d) 692; certiorari denied (1959), 361 U. S. 884.

If the seniority right of the employee did survive the agreement and attached to the new operation in another state, still it is a right which could be bargained away by him, or by his union if so authorized as his representative. *Colbert v. Brotherhood of Railroad Trainmen* (1953), 206 F. (2d) 9; certiorari denied (1954), 346 U. S. 931; *Aeronautical Industrial District Lodge 727 v. Campbell* (1949), 337 U. S. 521, 69 S. Ct. 1287; *Ford Motor Co. v. Huffman* (1953), 345 U. S. 330; *Hardcastle v. Western Greyhound Lines* (1962), 303 F. (2d) 182, certiorari denied (1962), 371 U. S. 920; *Oddie v. Ross Gear and Tool Co.* (1962), 305 F. (2d) 143.

Of course, the general authority of a mere "spokesman" for the union representing employees does not include the power to waive the individual seniority rights of employees to the personal advantage of the spokesman, as held in the case cited of *National Labor Relations Bd. v. Union Pacific Stages, Inc.* (1938), 99 F. (2d) 153.

In *Hamilton Foundry Machine Co. v. International Molders and Foundry Workers Union of N. A.*, 193 F. (2d) 209, cited by plaintiffs, the court found upon the facts and circumstances of that particular case that the union had not, in fact, accepted the contract in question. In our present case the trial court found otherwise. There was considerable evidence both ways. Hence we may not upset that finding.

In re *Wil-Low Cafeterias, Inc.* (1940), 111 F. (2d) 429, cit-

ed by plaintiffs, merely sustained the right of an employee under a collective bargaining agreement to vacation pay actually earned and accrued during the continuance of the agreement, and held he could not be deprived thereof because of employer's subsequent bankruptcy.

Principal attention is given in the briefs and arguments to seniority rights. We appreciate and sympathize with the employees in their predicament. Had their special concern revolved more completely around the pension plan, the situation would have been even more distressing. Yet, the same principle of alienability by agreement applies equally to all the rights involved.

In the present case the union did bargain away any pre-existing seniority and other rights by authority of the action taken by the membership in the meeting of October 17, 1961, when its negotiating committee was authorized to and did, on November 7, 1961, enter into the supplemental agreement.

Defendant argues that a vote of the membership was not required under the constitution and bylaws of the union. Assuming for our present purposes that it was required, let us examine plaintiffs' attack upon its validity, made by their rebuttal evidence.

This evidence tends to indicate the presence at the meeting of a mixed multitude of members and non-members, high feelings, and considerable confusion, which are not reflected in the minutes. According to this evidence, the president of the local who presided declared the voice vote favorable to the acceptance of the Memorandum of Agreement; there was an attempt to appeal his ruling to the assembly, which he ignored.

The courts will seldom, and only with great reluctance, enter into the internal affairs of an association, and then only after all remedies within the association have been exhausted, and will not disturb action taken by its officers or representatives unless they exceed their powers or there is fraud or collusion. 5 Ohio Jurisprudence (2d) 440, Associations, Section 7; *International Union of Steam & Operating Engineers* v. *Owens* (1928), 119 Ohio St. 94 (at 98, 99).

The record reflects no further action taken by the dissidents to upset or reverse the recorded action of this meeting of

October 17, 1961. On the contrary, it was almost universally acquiesced in, except for the eleven plaintiffs and perhaps three others who did not sign releases.

Just as subsequent conduct of the parties to a contract may be considered in construing its meaning, so likewise may their acquiescence in its provisions be considered as a recognition of the authority of their representatives to enter into it, and, if need be, a ratification of it.

The union is not a party to this suit in which its agreement is being collaterally attacked; neither are the hundreds of former members who have followed the provisions of the agreement. Hence, we may not at this time in this action declare void the acts upon which almost all the employees have relied and acted.

No error prejudicial to the plaintiffs-appellants appearing in the record, the judgment of the Court of Common Pleas will be affirmed.

*Judgment affirmed.*

KERNS and SHERER, JJ., concur.