**METAL POLISHERS LOCAL NO. 11, Plaintiff,**

v.

**KURZ–KASCH, INC., Defendant.**

**No. C–3–76–184.**

United States District Court, S. D. Ohio, W. D.

May 10, 1982.

William C. Hirsch, Cincinnati, Ohio, for plaintiff.

Frederick N. Young, Dayton, Ohio, Frank H. Stewart, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on Cross Motions for Summary Judgment and upon extensive and comprehensive memoranda filed by both sides. It has been agreed by the parties that the Court's disposition of the Cross Motions for Summary Judgment will be dispositive of this case.

For many years prior to November of 1975, the defendant, Kurz-Kasch, Inc., maintained a plant in Dayton, Ohio, known as the South Broadway Plant. The plaintiff, Metal Polishers, Buffers, Platers, and Allied Workers International Union, AFL–CIO Local 11, represented one bargaining unit at that plant. A Collective Bargaining Agreement previously negotiated between the parties expired on September 15, 1975. Although the plaintiff and defendant attempted to negotiate a new Collective Bargaining Agreement prior to the expiration date, they were unsuccessful. When the Agreement expired, members of the Metal Polishers Union went on strike, which continued until November of 1975. On November 17, 1975, the company determined to close the South Broadway Plant and it has never been re-opened. Kurz-Kasch continues to operate a plant in Dayton as well as plants in two other locations in Ohio.

At issue herein are a group life insurance policy and a Blue Cross/Blue Shield Group Medical Policy as such policies relate to retired employees of the South Broadway Plant. The question for determination is whether or not the defendant company is obligated to continue payment of premiums on such policies for retirees who retired prior to the termination of the last Collective Bargaining Agreement.[1]

After the South Broadway Plant was closed on November 17, 1975, the defendant terminated the group life and health insurance policies as to retired employees effective January 1, 1975 and February 1, 1975 respectively. (Stip. of Parties filed 1/26/77).

The procedural posture of this case may be summarized briefly as follows. The plaintiff Union brought an action in this Court on June 9, 1976, challenging the company's termination of these policies as to

---

1. It should be pointed out that this case does not involve those persons who were actively employed by the defendant in September of 1975, since no continuing right as to those employees has been asserted. Nor does this litigation involve any pension rights of the plaintiffs, since it is conceded by all parties that those who retired prior to the closing of the plant retain a vested right in their pensions and payments thereon have been made by the company as required.

retired employees. This Court *sua sponte* ordered that the parties proceed with arbitration of the dispute on April 5, 1977. After a hearing on September 6, 1978, the arbitrator issued his opinion on December 28, 1978, denying the Union's claim and this Court subsequently dismissed the action. The Union appealed the dismissal and the United States Court of Appeals for the Sixth Circuit vacated the dismissal and remanded the case to this Court on December 17, 1980 on the basis that the Collective Bargaining Agreement precluded arbitration unless the Union requested it. (Slip. op. at 3).

In its Supplemental Memorandum in support of its Motion for Summary Judgment, defendant, Kurz-Kasch, first argues that the Union has not stated a claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, upon which relief can be granted, because the agreement establishes arbitration as the sole resolution of disputes arising thereunder. The Court finds this argument untenable in view of the decision in this case by the United States Court of Appeals for the Sixth Circuit. The Court of Appeals held that the provisions which are the subject of this dispute are "not arbitrable, unless the Union requested arbitration" and, remanded the case for further proceedings in this Court "consistent with the determination...that the interpretation of the Collective Bargaining Agreement with respect to the rights of the plaintiffs was not subject to the grievance and arbitration procedures of the contract." Although the Court of Appeals did not elaborate on the reasoning behind its decision, it is implicit to this Court in the remand for further proceedings that the Court of Appeals considered the Union to have an alternative remedy to arbitration of this dispute, i.e. a federal cause of action under § 301 of the L.M.R.A., 29 U.S.C. § 185.

The defendant also contends that even if the Court is not prevented from resolving this dispute by the arbitration provision in the Collective Bargaining Agreement, it should accord the arbitrator's decision the weight ordinarily given to valid arbitral awards, i.e. the award should be affirmed unless tainted by corruption, fraud, misconduct, or abuse of delegated authority. The Court also finds this position without merit. The reference to arbitration was invalid and therefore the arbitrator's decision can only be considered a nullity. To hold otherwise, would completely abrogate the Union's right to invoke the jurisdiction of this Court as an alternative to arbitration. Accordingly, the Court will address the issues raised by the Cross Motions for Summary Judgment giving no weight whatsoever to the arbitral decision.

■ An initial question raised by the parties in their memoranda is the controlling law to be applied in this case. In actions arising under § 301 of the L.M.R.A., the substantive law to be applied is federal law which the federal courts have formulated based on the policy underlying the Federal Labor Laws. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). While state law may be consulted if compatible with the purpose of § 301 "in order to find the rule that will best effectuate the federal policy," it is not an independent source of private rights under Collective Bargaining Agreements. *Id.* at 457, 77 S.Ct. at 918. The Ohio cases relied upon by the plaintiff, therefore, are not controlling but merely persuasive in the event federal law in this area is unsettled.

The only provision of the Collective Bargaining Agreement which pertains directly to the rights of retired employees under the group life insurance and group medical insurance policies provides as follows:

"It is agreed that employees who are 62 years of age or over or who retire prior to such age by reason of such disability as entitles the employees to disability benefits under the Federal Social Security law and who has [sic] 10 years continuous employment by the company, may upon retirement, continue their participation in existing group insurance plans applicable to such employee by paying 50% of the premium required for such insurance.

The company agrees to pay all such group insurance premiums required for the continuation of existing employee group insurance with respect to any employee who reaches the age of 62 years of age or over or who retires prior to such age by reason of such disability as entitles the employee to disability benefits under the Federal Social Security law and who has 15 years or more continuous employment by the company and who retires from active employment. It is understood and agreed that such insurance premium payment provision shall continue only so long as such employees are in fact retired and remain unemployed, either by the company or by anyone else and that right is reserved by the company to pay such further retirement benefits in such cases as it may in its discretion determine advisable in individual cases."

Article XXIII of the Collective Bargaining Agreement entitled "Term" provides in part:

"This Agreement shall be effective as of September 15, 1973 and shall remain in effect until 12:00 P.M. on September 14, 1975, and thereafter for successive periods of one (1) year each, subject to termination by either party hereto at the end of the original term or at the end of any such additional year upon sixty (60) days written advance notice to the other party of intent to terminate this Agreement or to amend or modify any of the terms or conditions hereof at the end of any such period. In the event of the giving of any such notice to terminate or amend this Agreement at the end of the original or any succeeding term hereof, this Agreement and all terms and conditions hereof shall terminate as of the end of the term in which such notice was given."

The parties represent in their memoranda that both of these provisions have been included in every Collective Bargaining Agreement between the parties since at least 1960. No extension of this final Collective Bargaining Agreement was ever negotiated and on July 8, 1975, Kurz-Kasch notified the plaintiff of its intention to terminate the Agreement pursuant to Article XXIII.

Plaintiff contends that the retirees of the South Broadway Plant have a vested right to the insurance benefits provided for in the Collective Bargaining Agreement and that the defendant had no power to terminate those benefits when it exercised its right to terminate the Collective Bargaining Agreement. The union essentially makes two arguments in this regard. First, it argues that if an employee complies with all conditions of an employment contract relating to retirement benefits, his right to those benefits vests upon the attainment of retirement age despite an employer's retention of the right to terminate such benefits. Plaintiffs rely on two decisions of the Ohio Supreme Court for this proposition: *Cantor v. Berkshire Life Ins. Co.*, 171 Ohio St. 405, 171 N.E.2d 518 (1960) and *Sheehy v. Seilon, Inc.*, 10 Ohio St.2d 242, 227 N.E.2d 217 (1967). Plaintiffs also rely on the provision in the Collective Bargaining Agreement which states that the retirees life and health insurance benefits "shall continue only so long as such employees are in fact, retired and remain unemployed." The Union argues that this provision conversely establishes that as long as the employees do remain unemployed and retired, the employer's obligation to make payments continues beyond the term of the Collective Bargaining Agreement.

The defendant contends that there is no language in the Collective Bargaining Agreement which indicates that the retirees' rights to insurance benefits extend beyond the contract term. On the contrary, the defendant asserts that the general termination provision contained in Article XXIII is controlling and that plaintiff was notified on July 8, 1975, that any agreement, written, oral, or implied—or any conditions of employment, or other understanding then in effect would terminate as of September 15, 1975.

Both parties contend that the case of *Upholsterers Union v. American Pad and Textile Co.*, 372 F.2d 427 (6th Cir. 1967) supports their respective positions. In that

case, the Union sued the employer for breach of an agreement to provide life insurance for retired employees. Such benefits were originally provided pursuant to an informal company policy and later incorporated into a "supplement" to a Collective Bargaining Agreement. The term of the Collective Bargaining Agreement ran from August 7, 1959 until July 1, 1961 subject to an automatic extension provision and the supplement was signed on April 15, 1960. The supplement provided:

"2. It is further agreed that any employee with 15 years or more of continuous service with the American Pad and Textile Co. at the time of retirement and having attained the age of sixty-five (65) years, the company will continue to cover such eligible retired employees with $2,000 life insurance."

On May 11, 1962, the employer and the Union entered into an agreement providing for an extension of the Collective Bargaining Agreement and any supplements through June 30, 1963, or until cessation of plant operations, whichever occurred first. On November 30, 1962, the employer ceased operations of the plant and simultaneously terminated the life insurance policies of the retired employees. The district court (now Circuit Judge John W. Peck), granted summary judgment for the Union as to those retirees who retired prior to the agreement of May 11, 1962, and the United States Court of Appeals for the Sixth Circuit affirmed. The Court of Appeals found that the use of the word "continue" with respect to the company's obligation was ambiguous, i.e. capable of being construed as meaning either "for the term of the contract" or for "the term of such employee retirement." The Court opted for the latter construction based on the language used in the previous paragraph of the supplement dealing with the company's insurance obligation to present employees. That obligation was expressly limited to the duration of the current Collective Bargaining Agreement. While the Court of Appeals also stated that it believed it was dealing with "an employee benefit provision which vests when the employee's service called for is fully per-

formed," *Id.* at 428, the Court expressly concluded the decision with the following statement:

"It is sufficient for our purposes to affirm on the basis of interpretation of the Collective Bargaining Agreement. We do not have to consider (and do not) what, if any, vested rights the individual employees may have had in relation to life insurance as established by contract implied by their total relationships to the company, separate and apart from the Collective Bargaining Agreement." *Id.* at 429.

■ The first issue which must be addressed is whether the Collective Bargaining Agreement itself may be interpreted as creating a vested right to insurance benefits on the part of retired employees. Plaintiff relies primarily on the clause specifying that such benefits "shall continue only so long as such employees are in fact retired and remain unemployed." The Court finds this provision arguably ambiguous. It can be construed, as the Union contends, as meaning that the company's obligation is co-extensive with the employee's retirement and unemployment. Alternatively, it can be viewed consistent with the defendant's position, as merely providing that the company's obligation will terminate in the event a retired employee resumes any employment.

The United States Court of Appeals for the Sixth Circuit, when confronted with a similar ambiguity in *American Pad*, looked to the remainder of the Agreement to select the appropriate interpretation. Considered in its entirety, the Collective Bargaining Agreement in this case supports the company's construction. First, the "Term" provision contained in Article XXIII specifically states that "this Agreement and all terms and conditions hereof *shall terminate as of the end of the term* in which such notice was given." (emphasis added). Second, the insurance provision relating to retirees states that "[t]he company agrees to pay all such group insurance premiums required for the *continuation of existing employee group insurance* with respect to any em-

ployee [meeting certain retirement criteria]." (emphasis added). Also, unlike *American Pad*, there is no closely related provision contained in the Collective Bargaining Agreement which specifically limits the employer's obligation to the term or duration of the contract. Finally, the limited extrinsic evidence on the negotiations surrounding the contract in this case indicates that the Union merely sought insurance benefits on the part of retirees equal to those of the present employees of Kurz-Kasch. (Young Aff. p. 1).

In *Heheman v. E. W. Scripps*, 661 F.2d 1115 (6th Cir. 1981), the United States Court of Appeals for the Sixth Circuit recently addressed the question of whether a "scanner agreement" between the *Cincinnati Post* and the Typographical Union whereby the *Post* agreed that all regular situation holders would be "continuously employed for the remainder of their working lives by the *Post* as printers," subject to voluntary terminations, survived the duration of the underlying Collective Bargaining Agreement and the elimination of the *Post's* printing operations. The Court held that the explicit lifetime guarantee contained in the "scanner agreement" precluded the argument that it was dependent upon the Collective Bargaining Agreement as to duration, despite its explicit incorporation of the Collective Bargaining Agreement's terms in other respects. The Court, however, recognized the "traditional reluctance of courts to construe employment contracts as lifetime guarantees," and emphasized the "scanner agreement's *specific* statement that it superceded any and all existing contracts and/or agreements between the parties and was *permanent* unless cancelled by mutual agreement of both parties. *Id.* at 1121. (emphasis added).

In light of the above considerations, the Court finds that the retirees' right to life and health insurance benefits under the terms of the Collective Bargaining Agreement terminated as of September 15, 1975, when the underlying Agreement expired. *American Pad*, however, appears to have left open the question whether the retired employees may have a vested right to the

insurance benefits provided for by contract "as implied by their total relationship to the company, separate and apart from the Collective Bargaining Agreement." We now address that question.

■ Although the Court in *American Pad* stated that it believed the life insurance arrangements in that case constituted the type of employee benefit provision which "vests" when the employee's service called for is fully performed, there are certain aspects of the case at bar which are distinguishable. First, the insurance benefits in that case were provided first by company decision, and then confirmed by the Collective Bargaining Agreement. In this case, the benefits have apparently been provided only pursuant to identical provisions in successive Collective Bargaining Agreements, each of which has apparently also contained an identical provision governing the termination of all obligations arising under the Agreement. Second, the underlying contract in *American Pad* was found to support the interpretation that such retiree rights were intended to continue beyond the Agreement. Here, on the contrary, we have concluded that the contract as a whole indicates that the retirees' insurance benefits were dependent both on the existence of a general employee policy, and the duration of the Collective Bargaining Agreement. Thus, to hold that the retirees in this case have a vested right to the insurance benefits arising out of an implied contract would directly contradict the intention of the Collective Bargaining Agreement as construed by this Court.

The Supreme Court's decision in *Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) is instructive in this regard. That case held that because retirees were not employees under the National Labor Relations Act, their rights under a Collective Bargaining Agreement were not a mandatory subject of collective bargaining under the Act. The Court, while recognizing that the Union and present employees might have an interest in negotiating benefits for retirees, noted

"Having once found it advantageous to bargain for improvements in pensioners benefits, active workers are not forever thereafter bound to that view or obliged to negotiate in behalf of retirees again." *Id.* at 181, 92 S.Ct. at 398.

The Court has been unable to locate any federal decision which addresses the issue of whether benefits provided to retirees under a Collective Bargaining Agreement may become "vested" despite evidence of a contrary intent under the terms of the Agreement. On the contrary, the cases arising out of the federal courts which have dealt with the issue of whether health or life insurance benefits for retirees are "vested", have been decided solely under the terms of the Collective Bargaining Agreement or other contractual means providing for such benefits. *Turner v. Teamsters, Local 302,* 604 F.2d 1219, 1225 (9th Cir. 1979); *United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO v. Lee National Corp.,* 323 F.Supp. 1181, 1188 (S.D.N.Y. 1971).

Based on the facts of this case, the Court declines to find that the defendant is under an implied obligation arising out of the employment relationship to continue to pay the premiums for retirees on the insurance policies provided for in the Collective Bargaining Agreement. It is important to note that this case does not involve the retirees vested interest in a pension. The concern over the lack of employee protection in retirement plans prompted Congress to enact the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* in 1974. The statutory vesting requirements contained in ERISA, however, apply only to pension plans and not to health and life insurance benefits. 29 U.S.C. § 1051(1). The Court in *Turner, supra,* recognized the distinction between pension plans and welfare benefits in terms of the employers obligation as follows:

"Pensions are paid from an actuarily predetermined fund and are guaranteed for life. Health and welfare benefits are negotiated periodically and are paid from a fund consisting of employer contributions and last only the life of the Collective Bargaining Agreement."

The Courts have also recognized the trend of welfare plans toward the inclusion of retirees. *Blassie v. Kroger Co.,* 345 F.2d 58 (8th Cir. 1965). An employer's agreement to include retirees under group health and life insurance policies which cover an employer's present employees, and even to pay the premiums for such retirees, however, is a substantially different financial undertaking than the creation of a pension plan or a promise to provide insurance benefits to retirees for life irrespective of the existence of an existing group policy. In this regard, the Court in *Lee National, supra,* stated:

"The intent to terminate as to *all* employees, including retirees, is fortified by the undisputed fact that group insurance, which rests upon the insurability of the *entire* group, would be unobtainable, except possibly at prohibitive rates, for a group limited to retirees, who are for the most part over sixty-five (65) years of age."

The Court understands that many of the retirees in this case may have relied upon the defendant's provision of these insurance benefits and contemplated their continuation for the remainder of their lives. The Court also notes that they had no part in the Union's decision to strike in September of 1975. The fact, however, is undisputed that these benefits were only provided under Collective Bargaining Agreements with specific termination dates. Upon the expiration of such contracts, the parties were free to renegotiate all provisions relating to retired employees unless they involved "vested" rights. *Pittsburgh Glass, supra* 404 U.S. at 181, fn. 20, 92 S.Ct. at 398.[2]

---

2. The defendant's attempt to renegotiate the provision of the Collective Bargaining Agreement dealing with retirees' health and life insurance benefits during the negotiations prior to the closing of the plant, indicates that the

defendant believed such provision to be subject to modification or elimination altogether. In construing a contract, the construction which the parties themselves have given to the con-

The Court has already determined that there is no evidence of an intention on the part of the Union or the employer to establish such vested rights on behalf of the retired employees. In the absence thereof, an implied obligation to provide such unanticipated insurance coverage for retired employees should not be imposed.

IT IS SO ORDERED.

tract is of considerable weight. *Oddie v. Ross*   *Gear & Tool Co.*, 305 F.2d 143 (6th Cir. 1962).