RUTLEDGE ET AL., APPELLEES, *v.* DAYTON MALLEABLE, INC., APPELLANT.

(No. 83AP-355 — Decided
August 28, 1984.)

*Bernard Bernard* and *Gary J. Pandora,* for appellees.

*Smith & Schnacke, Robert J. Brown* and *Daniel G. Rosenthal,* for appellant.

MOYER, J. This case is before us on the appeal of defendant-appellant, Dayton Malleable, Inc., from a judgment of the Franklin County Court of Common Pleas sustaining, in part, the motion of plaintiffs-appellees, Robert and Lela Rutledge, for summary judgment and overruling defendant's motion for summary judgment.

Robert Rutledge (plaintiff) retired from his employment with defendant, Dayton Malleable, Inc., in 1975.[1] Following his retirement, plaintiff was covered by a $5,000 life insurance policy and a company-paid medical insurance policy. Defendant decided to permanently close its plant by May 31, 1980, and defendant and United Steelworkers Local 2654 entered into a plant closing agreement pursuant to which defendant claims that plaintiff's right to life and health insurance coverage was terminated.

Plaintiff brought this action against defendant when his medical insurance and life insurance benefits were terminated, alleging breach of contract and requesting damages for, *inter alia,* the cost of procuring other insurance.

The trial court awarded plaintiff damages for the cost of procuring replacement insurance and ordered defendant to either provide plaintiff with a $5,000 life insurance policy or pay plaintiff the present value of such policy.

Defendant asserts the following two assignments of error in support of its appeal from the trial court's judgment:

"1. The trial court erred in partially sustaining appellees' motion for summary judgment.

"2. The trial court erred in overruling appellant's motion for summary judgment."

The first issue presented by the parties is whether this case is governed by state or federal law. Plaintiff maintains that the case was brought under state law and defendant argues that federal law must be applied. The resolution of this controversy depends upon whether this action is a suit for the violation of a contract between an employer and a labor organization. If it is, the case arises under Section 301 of the Labor-Management Relations Act, Section 185, Title 29, U.S. Code (Section 301). Section 301 governs not only *suits* be-

---

[1] These facts, gleaned from the pleadings and the motions for summary judgment and their attached documents are, as the trial court noted, not disputed by the parties.

tween employers and labor organizations, but all suits based on *contracts* between employers and labor organizations. *Smith* v. *Evening News Assn.* (1962), 371 U.S. 195, 200. Thus, this case arises under Section 301 if plaintiff's cause of action is based on an agreement, such as a collective bargaining agreement, entered into between defendant and the union.

If the suit arises under Section 301, the state courts and the federal district courts have concurrent jurisdiction, but federal law, rather than state law, must be applied by the state courts. *Textile Workers Union* v. *Lincoln Mills* (1957), 353 U.S. 448, 456; *Internatl. Union, UAW* v. *Yard-Man, Inc.* (C.A. 6, 1983), 716 F.2d 1476, 1479; *Metal Polishers Local No. 11* v. *Kurz-Kasch, Inc.* (S.D. Ohio 1982), 538 F.Supp. 368, 370; *Holbrook* v. *Dana Corp.* (1980), 70 Ohio App. 2d 255, 261 [19 O.O.3d 397]; *Neal* v. *Reliance Electric & Engineering Co.* (1967), 12 Ohio App. 2d 183, 187 [41 O.O.2d 284].

"The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of *Lincoln Mills,* requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.

"More important, the subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' *Pennsylvania R. Co.* v. *Public Service Comm.,* 250 U.S. 566, 569." *Local 174, Teamsters* v. *Lucas Flour Co.* (1962), 369 U.S. 95, 103.

This is true even though plaintiff did not mention Section 301 in his complaint. *Hess* v. *Great A. & P. Tea Co.* (N.D. Ill. 1981), 520 F.Supp. 373, 376.

"The force of Federal preemption in this area of labor law cannot be avoided by failing to mention Section 301 in the complaint." *Avco Corp.* v. *Aero Lodge No. 735* (C.A. 6, 1967), 376 F.2d 337, 340, affirmed (1968), 390 U.S. 557.

The trial court apparently applied state law to this case in reliance on *Luli* v. *Sun Products Corp.* (1979), 60 Ohio St. 2d 144 [14 O.O.3d 384], and decided the case based on a general breach of contract theory. *Luli* is clearly not applicable to this case. *Luli* dealt with pension rights, rather than life insurance and health insurance rights, and *Luli* involved statutory vesting requirements for pension plans under the Employee Retirement Income Security Act, Section 1001 *et seq.,* Title 29, U.S. Code (ERISA). The principles pertaining to pension plans are not always applicable to insurance plans since pension plans, unlike insurance plans, are covered by ERISA. See *Metal Polishers Local No. 11* v. *Kurz-Kasch, Inc., supra,* at 374. The Ohio Supreme Court applied state law in *Luli* because ERISA expressly provides that it does not apply "to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." Section 1144(b)(1), Title 29, U.S. Code. The Sun Products Corporation plant closed in 1974 and the last collective bargaining agreement affecting the employees in *Luli* expired in 1973. Thus, the holding of *Luli* is that state law may be applied to suits based on the *termination* of a pension plan agreement when there is no governing federal law in effect. In this case, pension rights are not at issue and Section 301 has been in effect since 1947.

Plaintiff's complaint states that he was a party to and a beneficiary of the collective bargaining agreement entered into between defendant and the union and that:

"*Pursuant to the Contract of Agreement,* plaintiff was to receive certain medical care insurance benefits * * *.

"* * *

"* * * [P]ursuant to the attached

*contract* the defendant was to provide plaintiffs with a Five Thousand Dollar ($5,000.00) life insurance policy * * *." (Emphasis added.)

Plaintiff's suit is clearly based on the collective bargaining agreement entered into between his employer and his union. As such, plaintiff's suit arises under Section 301 and state courts, in the exercise of their concurrent jurisdiction, must recognize the federal preemption of this area of the law and apply substantive federal law.

The next issue presented is whether the trial court reached the correct conclusion under federal law. Although the trial court apparently did not apply federal law, its conclusion in plaintiff's favor will not be reversed if the same result would be reached under federal law. The issue of whether the trial court reached the correct conclusion depends for its resolution on whether plaintiff's rights in the insurance policy were vested rights.

Determining whether plaintiff's rights were vested rights:

"[R]equires interpretation of key contractual language in the collective bargaining agreement * * *

"* * *

"[Since] whether retiree insurance benefits continue beyond the expiration of the collective bargaining agreement depends upon the intent of the parties." *International Union, UAW* v. *Yard-Man, Inc., supra,* at 1479. See, also, *Upholsterers' Internatl. Union* v. *American Pad & Textile Co.* (C.A. 6, 1967), 372 F.2d 427, 428.

Although numerous cases discuss the vested rights question and reach different conclusions based on the language found in the various collective bargaining agreements, see, *e.g.,* *Internatl. Union, UAW* v. *Yard-Man, Inc., supra,* we have chosen, in the interest of brevity, to compare and contrast the language contained in the collective bargaining agreement at issue in

this case with the language found and the conclusions reached in only two other cases.

*Upholsterers' Internatl. Union* v. *American Pad & Textile Co.* involved a plant closing and the retirees' loss of their life insurance coverage. The pertinent portion of the collective bargaining agreement reads as follows:

"[T]he Company will continue to cover such eligible retired employees with $2,000 life insurance." *Id.* at 427.

The Sixth Circuit Court of Appeals held that the term "continue" was ambiguous since it could mean continue for the term of the collective bargaining agreement (as the company argued), or it could mean continue as long as the employee is retired (as the union, representing the retirees, argued). However, since the paragraph of the collective bargaining agreement dealing with active employees' insurance benefits clearly stated that their benefits would "continue in * * * effect for the duration of the current Collective Bargaining Agreement," the court held that the retirees' benefits were intended to continue even following the plant closing.

*Metal Polishers Local No. 11* v. *Kurz-Kasch, Inc., supra,* also involved a plant closing and the termination of retired employees' life and health insurance benefits. The pertinent portions of the collective bargaining agreement read as follows:

" 'The company agrees to pay all such group insurance premiums required for the continuation of existing employee group insurance with respect to any employee * * * who retires from active employment. It is understood and agreed that such insurance premium payment provision shall continue only so long as such employees are in fact retired and remain unemployed, * * * and that right is reserved by the company to pay such further retirement benefits in such cases as it may in its

discretion determine advisable in individual cases.'

"* * *

" '* * * In the event of the giving of any * * * notice to terminate or amend this Agreement, * * * this Agreement and all terms and conditions hereof shall terminate * * *.' " *Id.* at 371.

The United States District Court for the Southern District of Ohio found the phrase "shall continue only so long as such employees are in fact retired and remain unemployed" to be "arguably ambiguous." *Id.* at 372. However, the court held, based on its interpretation of the language of the collective bargaining agreement, that the retirees' rights to the insurance coverage were properly terminated for two reasons. First, unlike the agreement at issue in *American Pad,* this agreement did not contain a provision relating to the rights of active employees which employed different language specifically indicating that the active employees' insurance coverage would terminate at the termination of the collective bargaining agreement. Second, the agreement specifically stated that at the termination of the agreement, all terms and conditions of the agreement would terminate.

The collective bargaining agreement at issue in the present case provided, in part, as follows:

"(39) * * * All future retirees will receive $5,000.00 life insurance coverage. Such life insurance premiums will continue to be paid by the Company.

"* * *

"(42) Medical Care Insurance Program for Retirees. A comprehensive Company-paid medical insurance program will be maintained for retired employees."

The collective bargaining agreement at issue in this case is much more similar to the agreement in *American Pad* than to the agreement in *Kurz-Kasch* since it uses the words "will continue to be paid" and "will be maintained." These terms are, like the terms used in *American Pad,* arguably ambiguous. Furthermore, as in *American Pad,* this collective bargaining agreement expressly provided that the company agreed to pay for life and health insurance for active employees only "during the life of this Agreement." If the union and the company had intended that the company's obligation to provide insurance for retirees would exist only during the life of the agreement, they could have included the limiting language in the paragraph applicable to retirees. The fact that the limiting language is found in the paragraph relating to active employees but not in the paragraph pertaining to retirees demonstrates the contracting parties' intention to grant to retirees vested rights in the insurance.

Furthermore, unlike the contract at issue in *Kurz-Kasch,* this collective bargaining agreement did not contain a clause stating that, when the agreement terminated, all rights granted under the agreement would also terminate.

In addition, the section of the plant closing agreement which purportedly terminates retirees' insurance benefits as of May 31, 1980, refers only to "employees who have retired under the Pension Agreement." The pension agreement, found on pages P-1 to P-20 of the collective bargaining agreement, applies only to pensions, not to health and life insurance. Thus, no provision of the plant closing agreement demonstrates an intent to terminate the retirees' health and life insurance benefits.

The federal courts deciding cases such as *Kurz-Kasch, supra,* and *Turner v. Local Union No. 302* (C.A. 9, 1979), 604 F.2d 1219, which indicate that a union representing employees or retired employees may bargain away the employees' insurance rights, first found that those rights were not vested rights. The union cannot bargain away vested rights. *Internatl. Union, UAW* v. *Yard-*

*Man, Inc., supra,* at 1482, fn. 8, citing *Allied Chemical & Alkali Workers* v. *Pittsburgh Plate Glass* (1971), 404 U.S. 157, 181, fn. 20. In addition, it does not appear, in light of footnote 20 in *Allied Chemical,* that most unions even represent retired employees since retired employees are not members of the bargaining unit and their rights often conflict with the rights of active employees. If the union does not represent retirees, it certainly may not bargain away their rights.

By applying the federal cases discussed herein we conclude that, as a matter of federal law, plaintiff's rights in the insurance coverage became vested upon his retirement and the trial court reached the correct result even though it did not apply federal law.[2]

Defendant also argues that plaintiff's claim was not properly before the trial court because plaintiff failed to pursue the arbitration and grievance procedures set forth in the collective bargaining agreement.

The collective bargaining agreement contained provisions relevant to grievance and arbitration proceedings that stated:

## "GRIEVANCES

"Section 1. General

"(44) Should disagreement arise with respect to the rights of employees hereunder, including discipline, suspension or discharge, it shall be considered and disposed of in the manner herein provided.

"(45) For the purpose of employee representation, the Union shall maintain a General Grievance Committee * * *.

"* * *

"(50) * * *

"If the grievance is not satisfactorily settled in this step, it may be appealed to arbitration in writing to the Company within 15 days following the final decision.

"* * *

"Section 7. Arbitration Procedure.

"(56) Any grievance or other dispute arising out of the interpretation of the terms of this Agreement or the application thereof which has not been satisfactorily adjusted as hereinbefore provided, may be submitted to arbitration * * *.

"* * *

"Section 8. Arbitration Award.

"(58) The decision of the arbitrator with respect to any controversy submitted to him, shall be reduced to writing and shall be final and binding upon the parties hereto. The parties further agree that there shall be no suspension of work when any such arbitrable dispute arises and while it is in process of adjustment or arbitration."

As a general rule in cases to which federal labor law applies, individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the means of seeking redress. *Republic Steel Corp.* v. *Maddox* (1965), 379 U.S. 650, 652. See, also, *Clayton* v. *Internatl. Union, UAW* (1981), 451 U.S. 679, 681; Section 173, Title 29, U.S. Code.

However, as is the case with most general rules, numerous exceptions to the rule have evolved. We have reviewed eight of the exceptions that have been recognized by federal courts, including: when the union refuses to pursue the grievance or when the union has the sole

---

[2] Since federal law applies to this case and there are federal cases which clearly set forth the applicable standards and enable us to resolve this issue, the state court cases relied upon by plaintiff, *Sheehy* v. *Seilon, Inc.* (1967), 10 Ohio St. 2d 242 [39 O.O.2d 374],

and *Cantor* v. *Berkshire Life Ins. Co.* (1960), 171 Ohio St. 405 [14 O.O.2d 157] (which, we note, do not deal with collective bargaining agreements) need not be considered. See *Metal Polishers Local No. 11* v. *Kurz-Kasch, Inc., supra,* at 370.

power to invoke the grievance proceedings and the union wrongfully refuses to proceed with the grievance; when the contract provides that the contractual remedies need not be exhausted; when there is no possibility that the plaintiff's complaint could affect future relationships between the employer and the active employees; when the relief sought cannot be provided by the grievance procedure or the relief provided in the grievance procedure would be inadequate; when the employer's conduct constitutes a repudiation of the grievance procedures; when an attempt to invoke the grievance and arbitration proceedings would be futile; when the grievance and arbitration procedure takes too long to provide an adequate remedy; and when the union has the sole power to invoke the remedy.

We have determined that only the last exception is applicable to this case. This exception, as set forth by the Eighth Circuit Court of Appeals, applies when the union has the sole power to invoke the contractual remedies and the union owes no duty of fair representation to the complaining party. Plaintiffs, in *Anderson* v. *Alpha Portland Industries, Inc.* (C.A. 8, 1984), 727 F.2d 177, were retired employees claiming health and life insurance benefits under collective bargaining agreements which were in effect when plaintiffs retired. The arbitration and grievance provisions at issue in *Anderson* were very similar to the arbitration and grievance provisions in the present case. After Alpha Portland Industries closed its plant and terminated the retired employees' insurance benefits, plaintiffs brought suit under Section 301 without exhausting the contractual remedies. The facts of this case and those of *Anderson* are strikingly similar.

The *Anderson* court acknowledged the general rule that employees should attempt to employ any contractual remedies prior to bringing suit against the employer under Section 301. However, the court found that the plaintiffs came within an exception to the general rule because they were retirees. The court explained that a union's duty of fair representation:

"[A]rises from its status as exclusive representative of the employees within the bargaining unit * * *. Thus the union's duty runs to the employees in the bargaining unit. * * * It follows that the union owes no duty to persons who are not employees in the bargaining unit." *Anderson* v. *Alpha Portland Industries, Inc., supra,* at 181.

Retirees are not employees, they are not members of the collective bargaining unit, and the union therefore owes retirees no duty of fair representation. *Id.* See, also, *Allied Chemical & Alkali Workers* v. *Pittsburgh Plate Glass, supra,* at 181, fn. 20.

"* * * [A]ctive employees and retirees 'do not share a community of interest broad enough to justify inclusion of the retirees in the bargaining unit.' *Allied Chemical,* 404 U.S. at 173. * * * In contract administration the union must choose which grievance to pursue with limited resources. More resources spent pursuing retiree grievances means less available for grievances of active employees. Further, a victory for a retiree in a contract administration matter may ultimately be paid for by the active employees. * * *

"* * *

"In addition to creating difficulties for the union, the conflict of interest between active employees and retirees also threatens the retirees' interests. The threat is to the retirees' interests, not the active employees' interests * * *. The union leadership has no political interest in serving the interests of retirees because retirees do not vote in union certification elections and generally do not vote in union leadership elections. * * *"

*Anderson* v. *Alpha Portland Industries, Inc., supra,* at 183.

The *Anderson* court concluded that, "* * * Due to the drastic effect of an exhaustion requirement on retirees, a contractual exhaustion requirement will be found only where it is provided in express words that retirees must exhaust contractual remedies before suing the employer." *Id.* at 185 (citation omitted).

We find the *Anderson* opinion to be well-reasoned and therefore adopt it as the rule of this case. The collective bargaining agreement at issue in this case does not expressly require retirees to exhaust the contractual remedies before filing suit against the employer, and plaintiff's claims are not barred by his failure to pursue the grievance and arbitration procedures. * * *

For the foregoing reasons, defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and NORRIS, JJ., concur.