STEVENS, Appellee,

v.

RAVENNA ALUMINUM INDUSTRIES, INC., Appellant.*

[Cite as *Stevens v. Ravenna Aluminum Industries, Inc.* (1996), 114 Ohio App.3d 472.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 95-P-0056.

Decided Sept. 30, 1996.

* This court *sua sponte* vacates its opinion and judgment entry for this case filed on August 26, 1996.

It is further ordered *sua sponte* that the attached majority opinion and judgment entry be entered for those vacated.

The clerk of courts is instructed to strike the opinion and judgment entry of August 26, 1996, and substitute the attached opinion and judgment entry.

474

*David M. Benjamin*, for appellee.

*Buckley, King & Bluso, Robert F. Deacon* and *Glen H. Garrett*, for appellant.

---

FORD, Presiding Judge.

This is an appeal from the Portage County Court of Common Pleas, in which appellant, Ravenna Aluminum Industries, Inc., appeals from a jury verdict in favor of appellee, Robert F. Stevens, on a breach of employment agreement claim.

Appellant is in business as an aluminum foundry in Ravenna. Appellee was hired on June 22, 1989, and served in several positions in the plant during his tenure. On April 7, 1992, appellee hurt his back on the job during the midnight shift. Appellee consulted with the person who was filling in as his supervisor, Wayne Johnson, who had appellee fill out an accident report. After finishing the report, appellee left the plant as he felt he was too injured to continue working. Appellee did not punch out on the time clock before leaving, as he believed from prior experience that an employee was not to punch out to ensure full pay for that shift when injured while working.

Appellee visited his doctor the following afternoon for his injury and received a three-week excuse from work. Appellee then proceeded to appellant's plant in response to a call to meet with the personnel manager, Sherri McCulty; however, she had gone home for the evening when he arrived. The following day, April 8, 1992, appellee did finally meet with McCulty and David Boles, the assignment operations manager, at which point appellee was terminated for leaving the plant without his supervisor's permission, in violation of Company Rule No. 9 in the employment agreement between appellant and the Employees' Independent Committee.

Appellee filed suit against appellant on September 17, 1992, alleging wrongful termination in retaliation for filing a workers' compensation claim and for violation of the employment agreement.

Following discovery, appellant filed a motion for summary judgment or to dismiss. This motion was granted on August 9, 1993. The case was then appealed to this court, and in *Stevens v. Ravenna Aluminum Industries, Inc.* (May 27, 1994), Portage App. No. 93–P–0080, unreported, 1994 WL 237976, the granting of summary judgment on the claim of breach of the employment agreement was reversed and the cause was remanded for trial. Summary judgment was affirmed with respect to the retaliatory termination claim.

On May 2, 1995, a jury trial commenced. At the conclusion of the case, the jury found for appellee in the amount of $35,000 plus interest and costs. This verdict was journalized and filed on May 11, 1995. Appellant now appeals, raising the following as error:

"1. The trial court erred in overruling [appellant's] motion for directed verdict * * *.

"2. The trial court erred in rejecting [appellant's] proposed jury instructions * * *.

"3. The trial court erred by failing to apply federal labor law to [appellee's] claim.

"4. The trial court erred in overruling [appellant's] motion to quash subpoena and for protective order (re: Michael Trautman) and overruling [appellant's] second motion in limine * * *.

"5. The trial court erred in overruling [appellant's] motion to include an instruction to the jury regarding unemployment compensation received by [appellee] * * *.

"6. The trial court erred in overruling [appellant's] objection to testimony concerning company rules not in issue in this case * * *.

"7. The trial court erred in refusing to allow evidence to be admitted for the purpose of impeachment of a party's credibility * * *.

"8. The trial court erred in citing and fining [appellant's] counsel for contempt of court. * * *"

 In the first assignment, appellant contends that the trial court erred when it overruled its motion for a directed verdict pursuant to Civ.R. 50. However, as the court stated in *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus:

"When a motion for directed verdict is made by a defendant at the conclusion of the plaintiff's case and is overruled, the defendant's right to rely on the denial of that original motion as error is not waived when the defendant proceeds to

present his evidence and defense *as long as the motion is renewed at the conclusion of all of the evidence.*" (Emphasis added and citation omitted.)

As appellant's motion was not properly renewed at the close of its case-in-chief, any alleged error in the overruling of the initial motion is waived for appellate purposes. Appellant's first assignment is without merit.

■ In appellant's second assignment, it is contended that the trial court erred when it presented inaccurate jury instructions to the jury. In particular, appellant takes issue with the following instruction:

"Now, as I indicated to you [the jury], the Court had previously ruled that there is no issue before you as to whether or not there was a contract in this case.

"Now, [appellee] in this case claims that he had a contract with [appellant], as an employee under an agreement between the company and a committee representing certain employees, including [appellee] within that group of represented employees. He claims that the company breached or broke the contract by discharging him without cause and he claims money damages for loss of pay and benefits sufficient as a result of that discharge.

"Now [appellant], denies that its [*sic*] violated or broke the agreement and claims that [appellee] was discharged because [appellee] violated or breached the contract and was thereby discharged with cause under the contract."

A review of the pertinent portion of the transcript reveals that appellant did, contrary to appellee's contention, preserve this error. It appears that appellant wished to contest the existence of the contract and requested an instruction on the topic, to which the court stated:

"Well, based upon the evidence here, I don't see any dispute of fact. Your man says he has a contract, his man says, how can they say he doesn't?

"* * *

"This whole case has been tried on the basis he didn't comply with the language in [the contract] or he did."

This discussion surrounding the jury instructions closely parroted the dialogue that took place on the record at sidebar, during which the following conversation took place:

"THE COURT: I don't think [the existence of the employment agreement/contract is] a dispute of fact anymore.

"* * *

"THE COURT: Based on what [appellant's company President] said, I have to tell the Jury they had an agreement. He said he did.

"[Appellant's counsel] It speaks for itself."

Prior to closing arguments, the court explained to the jury:

"I do want to say so you understand, the Court has made a finding, based upon the evidence that there is no real dispute here that there was a contract or an agreement between the company and the representatives of the workers there, which included [appellee]. So you don't have to make a decision as to whether there was a contract or not."

The court then proceeded to instruct the jury as was quoted above. This court fails to perceive how the trial court erred when it presented the foregoing instruction. The court had ruled that the existence of the contract or agreement was not in dispute, and removed that issue from the jury's consideration. Counsel's insinuation that the trial court "changed its mind and rushed to instruct the Jury on the subject, resulting in incomplete, inept, hastily constructed instructions" is totally inconsistent with what transpired at trial. The trial court removed the existence of a contract from the deliberations of the jury, and then instructed the jury on the same conclusion. Further, appellant has not assigned as error that the trial court erred when it directed the jury regarding the existence of a contract. As we perceive no error, appellant's second assignment is without merit.

In appellant's third assignment, it is contended that the trial court erred when it did not apply the appropriate federal labor law in this case. For the following reasons, this contention is without merit.

First, we note that contrary to appellant's apparent contention in this assignment, this alleged error is *not* jurisdictional, as it has been held that state courts have *concurrent jurisdiction* on federal labor law matters. See *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.* (1962), 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; see, also, *Rutledge v. Dayton Malleable, Inc.* (1984), 20 Ohio App.3d 229, 231, 20 OBR 290, 291–292, 485 N.E.2d 757, 759–760; *Neal v. Reliance Elec. & Eng. Co.* (1967), 12 Ohio App.2d 183, 187, 41 O.O.2d 284, 287, 231 N.E.2d 882, 885. While such a case may be removed to federal court, appellant chose not to avail itself of that option, leaving this case to be litigated in the Portage County Court of Common Pleas.

Secondly, appellant is correct that federal law must be applied in the federal labor law context when the dispute involves the interpretation of the collective bargaining agreement.[1] See *DeCoe v. Gen. Motors Corp.* (C.A.6, 1994), 32 F.3d

---

1. We note with interest appellant's conflicting contentions in this case. In the first assignment, appellant argues that there was no collective bargaining agreement, while simultaneously contending that the trial court erred when it did not utilize federal labor law to interpret the collective bargaining agreement in this assignment.

212; *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 203, 105 S.Ct. 1904, 1907, 85 L.Ed.2d 206, 210.

▮ Accordingly, if appellant directed the trial court to any relevant federal labor law and where the dispute involved the interpretation of the labor agreement, the trial court would have been obligated to apply it. However, a review of the record in this case reveals that appellant did not raise this issue before the trial court. In fact, appellant's proposed jury instructions, filed four days *after* the jury's verdict but apparently presented to the court during trial, also were based upon Ohio law. This demonstrates the fact that appellant also felt that Ohio law controlled this case. Also, no objection to the court's jury instructions relating to the choice of laws was ever raised. Civ.R. 51(A) states:

"On appeal, a party *may not* assign as error the giving or the failure to give any instruction unless the party objects *before* the jury retires to consider its verdict, stating specifically the matter objected to and the grounds for the objection." (Emphasis added.)

We note that Fed.R.Civ.P. 51 contains virtually identical language.

▮ As appellant failed to object or proffer appropriate federal jury instructions and raised no objection at the trial level regarding the choice of law, appellant has waived any error in the jury instructions regarding that issue. In any event, as the court stated in *Rutledge*, "[a]lthough the trial court apparently did not apply federal law, its conclusion in plaintiff's favor will not be reversed if the same result would be reached under federal law." *Id.*, 20 Ohio App.3d at 232, 20 OBR at 293, 485 N.E.2d at 760. In this case, appellant has not demonstrated at any stage in the proceedings that the application of federal law would have altered the result in this case. For each of the foregoing reasons, appellant's third assignment is without merit.

▮ Appellant's fourth assignment claims error in the trial court's decision to overrule appellant's motion to quash subpoena, motion for a protective order and motion *in limine*. This contention is meritless.

Appellant takes specific issue with the trial court allowing the introduction of evidence regarding an instance subsequent to appellee's termination in which another employee was disciplined but not terminated for leaving the plant due to injury without first receiving permission from his supervisor. This was the subject of appellant's motions.

The decision by a trial court to admit or exclude evidence on relevancy or undue prejudice grounds is governed by Evid.R. 401 to 403. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence." The evidence showed that another employee who was working under the same bargaining agreement was not terminated for conduct that by any analysis was virtually identical to the sequence of events that led to appellee's firing. Certainly this evidence was relevant to the issue of whether appellee was wrongfully terminated. Accordingly, pursuant to Evid.R. 402, this relevant evidence will generally be admissible.

Evid.R. 403(A) provides a caveat that otherwise relevant evidence must be excluded "if its probative value is *substantially* outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." (Emphasis added.)

As the court stated in *Renfro v. Black* (1990), 52 Ohio St.3d 27, 31, 556 N.E.2d 150, 154:

"The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1385."

■ With the foregoing in mind, it is well settled that the decision to admit evidence rests within the sound discretion of the trial court. See *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444. To sustain a reversal predicated upon an abuse of discretion, appellant must demonstrate an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. Given the obvious similarity between the two disciplinary actions at issue in this assignment, we simply cannot say that the trial court abused its discretion when it found that the prejudice did not substantially outweigh the probative value of the evidence. Appellant's fourth assignment is without merit.

■ Appellant, in the fifth assignment, contends that the trial court erred when it did not instruct the jury regarding unemployment compensation as a setoff against any award appellee would receive. Appellant refers us to *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App.3d 99, 105, 529 N.E.2d 958, 965–966, in which the Franklin County Court of Appeals held that unemployment benefits should be deducted from a back pay award.

■ Again, we must point out that, contrary to appellee's argument that this issue was not preserved for appellate purposes, a review of the transcript reveals that counsel requested a specific jury instruction on this matter, thus preserving this issue for appeal.

In *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 630 N.E.2d 669, paragraph four of the syllabus, the court held that "[u]nemployment compensation benefits are not 'interim earnings' and should not

be deducted from a back pay award made pursuant to R.C. 4112.05(G)." This case expressly limited *State ex rel. Guerrero v. Ferguson* (1981), 68 Ohio St.2d 6, 22 O.O.3d 98, 427 N.E.2d 515, which stated that a back pay award to a reinstated public employee should be reduced by unemployment payments received because the state should not be made to pay twice, and implicitly limited *Mers*. The *Ingram* court stated that in the discrimination context, unemployment benefits should not be used to reduce an award because of an overriding federal policy to the contrary. See, also, *Burnworth v. Ohio Bell Tel. Co.* (Sept. 25, 1995), Stark App. No. 1995CA00007, unreported, 1995 WL 615701.

However, the *Ingram* decision was careful to distinguish the remainder of the *Mers* decision while reaching this decision. The *Mers* court held that the unemployment benefits must be subtracted or the plaintiff would be compensated twice for the same injury, and this principle applies to private employers as well as to the state.[2] *Id.*, 39 Ohio App.3d at 105, 529 N.E.2d at 965–966. The *Mers* court concluded that the back pay award must be reduced by the amount of unemployment benefits received. This rationale is persuasive.

In this case, it is undisputed that appellee received $2,828 in unemployment compensation. Accordingly, the damage award of $35,000 must be reduced by $2,828. Appellant's fifth assignment has merit, and the judgment of the trial court is modified accordingly, and the judgment will be affirmed regarding this assignment as modified.

Appellant's sixth assignment concerns alleged error in the trial court's decision to admit, over objection, evidence regarding other company rules that were not used in the decision to terminate appellee.

A review of the transcript reveals that in the cross-examination of McCulty, the personnel manager, she was asked about the sequence of events surrounding appellee's termination. When questioned about Company Rule No. 7, the rule with which appellant now takes issue, she explained that that rule concerned not being at a work station at a beginning of a shift. Appellee's counsel then queried about why no notice was placed in appellee's personnel file regarding not showing up for work on April 7, 1992, while he was not actually terminated until April 8, 1992. In response to this line of questioning, McCulty explained that because appellee had violated Company Rule No. 9 the night before, he was not scheduled for work that evening. No further questioning regarding this issue was attempted.

We fail to see exactly how appellant was prejudiced by the admission of this testimony. Appellant claims that this evidence was prejudicial because it queried

---

2. The *Guerrero* decision had held similarly in the state as the employer context.

about a rule with a different disciplinary policy than the one appellee was terminated for violating. However, this line of questioning went directly to the issue of lack of uniformity in the application of these disciplinary rules. The context and relationship between the rules were amply explained by the witness, and appellant has demonstrated no abuse of discretion. *Renfro,* 52 Ohio St.3d at 31, 556 N.E.2d at 153–154; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Although the relevancy of this evidence is questionable, the total lack of prejudice is clear. Appellant's sixth assignment is without merit.

The seventh assignment concerns alleged error in the trial court's decision not to permit the admission of certain impeachment evidence. This contention is not well taken.

In the cross-examination of appellee and in the examination of impeachment witnesses, appellant attempted to elicit testimony and ultimately introduce exhibits regarding the circumstances surrounding appellee's departure from subsequent jobs as impeachment evidence. Particularly, appellant attempted to show that appellee had been terminated from those positions, something he had denied previously. We note that such testimony regarding these subsequent, unrelated job terminations by third parties is collateral to the issue in controversy. The facts and circumstances surrounding why appellee left other employment are unrelated to this case, and were offered only to impeach appellee in regard to his statement that he had left under favorable, rather than unfavorable, terms. It is fundamental that the use of evidence on collateral issues is limited by Evid.R. 608(B), which states:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witnesses's character for truthfulness * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness * * *."

In *State v. Leuin* (1984), 11 Ohio St.3d 172, 174, 11 OBR 486, 488–489, 464 N.E.2d 552, 554–555, the court stated:

"From the foregoing rule, it is apparent that specific instances of conduct, relating only to the credibility of a witness, may not be established by extrinsic evidence. If this were not the rule, trial could potentially become bogged down in an interminable parade of witnesses called to testify as to specific instances of conduct of a prior witness in an attempt to contradict the prior witness' testimony on a purely collateral matter. * * *

"* * * The state's rebuttal testimony, by the state's own admission, was offered solely in an attempt to impeach the testimony of [a witness]. This is precisely the mischief that Evid.R. 608(B) was intended to prevent. * * *

"That is not to say, however, that the state was prohibited from questioning [the witness] on cross-examination as to these specific instances of conduct. Evid.R. 608(B) allows, in the court's discretion, cross-examination on specific instances of conduct 'if clearly probative of truthfulness or untruthfulness.' Nevertheless, if the answers received on cross-examination do not satisfy the examiner, it is said that the examiner is bound or 'stuck' with the responses. See, *e.g.*, *State v. Gardner* (1979), 59 Ohio St.2d 14, 19[, 13 O.O.3d 8, 10–11, 391 N.E.2d 337, 341]." (Footnote omitted.)

Such was the case in this trial. Appellant was permitted on cross-examination to inquire regarding appellee's terminations from subsequent employment when the court obviously believed that such evidence was clearly probative and relevant as impeachment evidence. See, *e.g.*, *State v. Dobies* (Dec. 18, 1992), Lake App. No. 91–L–123, unreported, 1992 WL 387356. However, appellant should not have been permitted to call further witnesses to impeach on collateral issues such as this, and it follows that exhibits that go to such collateral issues are, similarly, inadmissible.

The only error committed in the trial court regarding this topic was the trial court's permitting another witness to testify regarding the circumstances surrounding appellee's termination from an unrelated position subsequent to his discharge from appellant's plant. However, as this error had no effect on this case and appellee has failed to raise a cross-appeal on this issue, this error is irrelevant to this appeal and we will not further address it. Appellant's seventh assignment is without merit.

█ In the eighth and final assignment, it is contended that the trial court erred when it held appellant's counsel in contempt of court. Appellant states that the trial court allowed counsel to proceed along one line of questioning, but then held him in contempt for doing the same thing at a later juncture. For the following reasons, his contention is without merit.

█ Initially, we would note that this assignment is not appropriately presented in the context of this appeal. It was the obligation of appellant's counsel to file a separate appeal to address the validity of the trial court finding him in contempt of court, as it is inappropriate for counsel to pursue a purely personal appeal while serving in his representative capacity. Further, this matter does not emanate from the judgment being appealed in this case; instead it arises from a contempt order filed on September 14, 1995. As no notice of appeal has

been filed from this order, and the time period in which such a notice may be filed has passed, this matter has not been timely filed.

However, even if this assignment were properly before us, it would be without merit. We first note that counsel's conduct was "committed in the presence of or so near the court as to obstruct the due and orderly administration of justice," making this conduct direct contempt of court. *In re Lands* (1946), 146 Ohio St. 589, 595, 33 O.O. 80, 83, 67 N.E.2d 433, 437; see, also, *In re Purola* (1991), 73 Ohio App.3d 306, 596 N.E.2d 1140. Further, the decision to hold someone in contempt of court will not be disturbed on appeal absent an abuse of discretion. *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 573 N.E.2d 62.

A review of the transcript in this matter shows that counsel engaged in a pattern of improper questioning for which he received several warnings, and ultimately a contempt sanction. The transcript reveals the following warnings from the trial court in response to repeated transgressions by counsel during questioning:

"Objection sustained. You know better than that.

" * * *

"Don't tell him what your understanding is or read it to him.

"You are doing it again Counsel, and I'm going to fine you. You don't read or say what a letter says until I have ruled on the admissibility of that, you know better than that. I will have no more of it.

" * * *

"He just said he didn't remember that and you were just testifying again.

" * * *

"Objection sustained. That's closing argument. You have a question, you ask him a question. * * *

" * * *

"Counsel, I thought I just ruled on that. I said it was covered before. You said you wanted to go into it more and I said no. I thought I was done ruling on that.

" * * *

"Start paying attention to me when I'm talking to you.

" * * *

" * * * I realize it's cross-examination, but that does not give you permission to testify.

" * * *

"Counsel, please don't testify."

Finally, in response to the question on direct examination regarding a document ("Does it indicate that the reason for his termination was poor job performance?") and after objection and a request for a contempt finding, the court responded that "[w]e will get to that later. Objection sustained." Moments later, after another objection regarding a question asked by counsel was sustained, appellant's counsel again blurted out a question more akin to testimony when he stated, "The only question I have for you with regard to that document, that document indicates that [appellee] was permanently dismissed." Immediately following this "question," the trial court interrupted and stated:

"Now, wait a minute. You're again testifying when I just sustained an objection as to what's on that sheet. You're trying to bring it in that way.

"Young man, you owe this Court $500 for contempt of Court.

"You're deliberately violating this Court's instruction constantly and it will cease because the next time it's not just money.

" * * *

"I don't want your apology, I want your compliance."

Upon consideration of the entire record before this court, and in view of the numerous warnings regarding the issue that counsel elicit testimony from the witnesses and not to testify himself, we cannot say that it was an abuse of discretion for the trial court to hold appellant's counsel in contempt of court. See *Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62. Accordingly, appellant's eighth assignment of error is dismissed. A merit analysis as stated does not obviate this result.

For the foregoing reasons, all of appellant's assignments with the exception of the fifth assignment are without merit, and the fifth assignment has merit. The judgment of the trial court is modified to reflect a $2,828 credit against the judgment for unemployment benefits received by appellee, making the modified judgment $32,172 plus interest and costs. The judgment of the trial court is, thus, modified and is affirmed as modified.

*Judgment affirmed as modified.*

NADER and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.